Clarence **CLOUD** and Marie Cloud, on their own behalf and as parents and next friend of their infant children Brenda Kay, et al., Plaintiffs,

v.

Merritt S. **DIETZ**, as Commissioner of Economic Security, et al., Defendants.

Civ. A. No. 347.

United States District Court,
E. D. Kentucky,
Frankfort Division.

Aug. 23, 1971.

David H. Wilderman and Howard Thorkelson, Mountain Legal Rights Assn., Prestonsburg, Ky., Louise Lander, Christopher H. Clancy, Henry A. Freedman and Paul M. Dodyk, Center on Social Welfare, New York City, for plaintiffs.

Paul E. Tierney, James G. Childers, Frankfort, Ky., for defendants.

Before BROOKS, Circuit Judge, and PORTER and SWINFORD, District Judges.

## MEMORANDUM

SWINFORD, District Judge.

Plaintiffs have brought this action on behalf of themselves and others similarly situated, seeking declaratory and injunctive relief, to prevent defendants, Merritt S. Dietz, Commissioner of the Kentucky Department of Economic Security, and others, from effectuating an amendment to the Public Assistance Manual of Operation for the Medical Assistance Program of Kentucky which classifies as employed those persons engaged in training programs who receive

a real wage regardless of the fact that they may be primarily given vocational training. Plaintiffs are enrolled in training programs (The Concentrated Employment Program and The Nelson Scheuer Mainstream Program) administered by the United States Department of Labor. In addition to receiving vocational training the participants of these programs are paid a federal minimum wage. The State by and through defendants and in accordance with the amended Public Assistance Manual, has classified plaintiffs, because of their participation in the programs, as employed and therefore not entitled to medical aid benefits. Plaintiffs contend that entitlement to medical aid should be based on need alone, and that the "employment" exclusion is arbitrary and invidiously discriminatory.

On April 22, 1970, this court ruled that plaintiffs had been denied their benefits without due process of law and ordered that plaintiffs be given pretermination evidentiary hearings before their benefits could be withdrawn. Defendants have complied with that order, but have again denied plaintiffs relief. The case is now before the court on motions for summary judgments by both plaintiffs and defendants.

## JURISDICTION

The first question to resolve is whether the court should because of comity considerations refuse to issue an injunction or declaratory order in this case. It is this court's opinion that this is not a case which it should abstain from deciding or which is barred by the anti-injunction statute, 28 United States Code § 2283. Defendants argue that a federal court should not rule upon the constitutionality of a state statute until the state courts have had an opportunity to construe the statute. This rule of

comity is, defendants assert, particularly applicable where there is a possibility that the statute could be held constitutional. The court is mindful of the importance of maintaining a separation between the federal and state judicial systems, however, the court is of the opinion that the present cause was properly instituted in this forum and should be allowed to proceed to judgment. It is true that the resolution of this case depends upon the interpretation of a state statute, and defendants have argued that the state courts should be given an opportunity to interpret that statute before its constitutionality is challenged in a federal court. Defendants have cited several federal cases expounding the propriety of the abstention doctrine where the controversy hinges on the construction of a state statute which has not been interpreted by the state courts.* This court does not take issue with the principles expressed in those cases, however the court believes that although the determination of this case requires the interpretation of a state statute, the interpretation of that statute does not require an application of state law. The fundamental issues of this case involve federal questions.

This cause was initiated under the Civil Rights Act; specifically section 1983 of Title 42 and section 1343 of Title 28, United States Code. Plaintiffs have charged that the amendment to the Public Assistance Manual has denied them equal protection of the laws under the Fourteenth Amendment of the Constitution. Section 1983 provides a remedy where it is alleged that the plaintiff or plaintiffs have suffered a deprivation of their constitutional rights under color of state law. The remedy provided by section 1983 is supplementary to any state remedy. It is therefore not necessary that a party proceeding under sec-

---

* Williams v. Hot Shoppes, Inc., 110 U.S. App.D.C. 358, 293 F.2d 835 (1961); Dawley v. Norfolk, 260 F.2d 647 (4 Cir. 1958); Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed. 2d 234 (1970); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed. 2d 1152 (1959); and Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941).

tion 1983 exhaust his state court remedies. The Supreme Court has expressly held in cases where the constitutionality of state welfare statutes have been challenged that exhaustion of state court remedies is not required. In Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), the Supreme Court held that the three judge court wrongfully dismissed, for failure to exhaust state court remedies, plaintiffs' complaint attacking the constitutionality of a state welfare statute. The opinion of the court included the following:

> "The three-judge District Court dismissed the complaint solely because 'it appear(ed) to the Court that all of the plaintiffs (had) failed to exhaust adequate administrative remedies.' This was error. In McNeese v. Board of Education, 373 U.S. 668 [83 S.Ct. 1433, 10 L.Ed.2d 622], noting that one of the purposes underlying the Civil Rights Act was 'to provide a remedy in the federal courts supplementary to any remedy any State might have,' id., at 672 [83 S.Ct. at 1435], we held that 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided (an administrative) remedy,' id., at 671 [83 S.Ct. at 1435]. See Monroe v. Pape, 365 U.S. 167, 180–183 [81 S.Ct. 473, 480–482, 5 L.Ed.2d 492]. We intimate no view upon the merits of appellants' allegations nor upon the other grounds not passed upon by the District Court."

In King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the Supreme Court again held that exhaustion of state remedies was not a prerequisite to suits brought under section 1983. The Court noted that a plaintiff in an action brought under the Civil Rights Act (section 1983) is not required to exhaust administrative remedies where the constitutional challenge is sufficiently substantial to require the convening of a three judge court. This court is satisfied that the plaintiffs have raised questions upon which we must not refuse to rule.

■ Intertwined with the defendants' abstention argument is the contention that this case is barred by the anti-injunction statute, 28 United States Code 2283. The defendants have cited the recent Supreme Court case of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the companion cases decided therewith, as authority for their proposition. Although section 2283 has as its foundation the notion of the need to adhere to our dual court system, this court does not believe that its restrictions are applicable to this proceeding. The primary purpose of the anti-injunction statute is to prevent federal courts from interfering with state court prosecutions or actions which at the time federal relief is sought are pending. No state actions involving the questions raised in this controversy are at this time pending nor has this court been asked to enjoin any state proceeding now pending in the state courts. In Younger the Court qualified its opinion by stating that "We express no view about the circumstance under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." The court is convinced that this action does not violate the restraints expressed in 28 United States Code 2283.

## MOTIONS FOR SUMMARY JUDGMENT

■ In deciding the merits of this case it is the opinion of the court that the amended portion of the Kentucky Public Assistance Manual is not violative of the equal protection clause of the Fourteenth Amendment.

Section 5154 of the Manual of Operation of the Medical Assistance Program reads in pertinent part as follows:

> "B. *A parent regularly attending, at public expense,* a formalized full-time training course, below the college level, for example, MDTA, will be considered unemployed for the duration of the training period. **NOTE:** Public

works projects in which the parent receives a 'real' wage, that is, subject to deductions for Social Security, income tax, etc., is not considered a training course even though the project incorporates a training component.

"C. *A parent will not be considered unemployed* unless he is employed less than thirty hours a week or ¾ of the number of hours considered to be full-time for the particular job, whichever is less."

Plaintiffs assert that the employment classification exclusion discriminates against them and their children in that they are the very people whom the medicaid program was intended to benefit. The program was conceived, it is alleged, to benefit, among others, those people on marginal incomes, who would be compelled to sacrifice certain of their basic necessities (food, clothing or shelter) in order to pay medical expenses when and if those expenses arose.

Plaintiffs argue that the only permissible and logical test for determining medical aid entitlement is "need". Any other standard would of necessity discriminate between welfare families and the families of working poor and would tend to discourage the acceptance of low income jobs and perpetuate the welfare and medicaid rolls, which would seem to be diametrically opposed to at least one of the intended goals of welfare, i. e. the encouragement of employment and concomitant reduction of people receiving public assistance.

■ Plaintiffs' arguments are not unpersuasive nor without reason and logic, however, the perhaps more virtuous standard of need notwithstanding, this court may only rule upon the constitutionality of the employment classification. It is not within the domain of this court to weigh the humanistic merits of the state's present standards of qualification for medicaid benefits. The court may only decide whether the employment standard is violative of the equal protection clause of the Fourteenth Amendment of the Constitution.

■ The traditional test for determining whether a statute is violative of equal protection of the law is whether the challenged classification rests on grounds wholly irrelevant to the advancement of a valid state objective. McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). If, however, the statute incorporates a "suspect" basis of classification, then the state must show that that classification serves a compelling governmental interest. See Macias v. Finch, infra. A "suspect" classification would be one that is inherently violative of one or more of the enumerated constitutional rights such as the freedoms of speech, assembly and religion. Because the employment exclusion is not grounded on an odious classification, the state is only required to show that it does not rest on grounds wholly irrelevant to the advancement of a valid state objective.

Defendants have averred that it became necessary to make retrenchments in the coverage offered by the medicaid program due to the unexpected high utilization of the program coupled with a depletion of available funds. The court is satisfied that these factors justify the modifications the state has made in the program's eligibility requirements. As stated in Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), "A classification having some reasonable basis does not offend against that clause (the equal protection clause) merely because it is not made with mathematical nicety or because in practice it results in some inequality".

The predicament of the administrators of the Kentucky medicaid program is not unlike the situation other state medicaid program administrators have found themselves in. Many states offering federally subsidized medicaid programs have found it necessary to redefine eligibility requirements and to make cutbacks in services offered. Section 1396 of Title 42, United States Code, under which most of the state medicaid

programs have been created, did require, before recent amendments, that the states effect a continued liberalization of their eligibility requirements and develop a complete and comprehensive medicaid program by July 1, 1977. The statute also made payments by the Secretary of Health, Education and Welfare contingent on the condition that the states would make no reductions in the services which they offered. Because of unanticipated cost and utilization many states realized that their programs could not be expanded at the desired pace. Accordingly, sections 1396a(c) and 1396b (e) were amended or excised on August 9, 1969, to mitigate the requirements that the programs be expanded and liberalized by July of 1977. The legislative history of the amendments, found in U. S. Code Congressional and Administrative News, (1969), at page 1082, explains that:

"We wish to reaffirm our support of section 1903(e), (1396) as a valid public goal. However, we cannot support at this time, the functioning of that section as a statutory mandate upon the States. In light of what has transpired since 1965 in terms of health care costs rising far beyond anything envisaged when section 1903 (e) was enacted and far more people than anticipated being determined 'medically indigent,' the mandatory aspect of that section has created an almost fiscally unbearable burden in many States. Until such time as the Federal, State, and local governments institute and make effective appropriate controls over costs, utilization, and eligibility, we should not continue a provision which can only function to compound an already intolerable situation.

"For these reasons the committee has concluded that suspension of section 1903(e) at this time is both prudent and necessary."

It is clear that the remedial actions taken by defendants were authorized by the federal government. In fact it appears that the eligibility requirement or employment exclusion adopted by defendants was recommended by the Department of Health, Education and Welfare. A statement by Commissioner Dietz, foretelling of the proposed changes in the medicaid program, made on June 13, 1969, included the following excerpt:

"All persons who receive a paycheck from which ordinary payroll deductions are made will be considered as 'employed'. Because of a deficiency in present regulations, approximately 1500 persons now employed fulltime on federal training programs are considered as 'unemployed' for medical assistance purposes. These men now earn approximately $70 per week— which is above the established poverty level—and are being retrained for private employment. *This adjustment has been recommended by Health, Education and Welfare officials, as being consistent with accepted principles of social rehabilitation.*"

Additionally, it should be noted, that the employment definition included in the amendment to the Kentucky Public Assistance Manual is prescribed by section 233.110 of Title 45 of the Code of Federal Regulations. The definition of an unemployed parent specified in that regulation reads as follows:

"Who has been deprived of parental support or care by reason of the fact that his father is employed less than 35 hours a week or less than the number of hours considered by the industry to be full time for the job, whichever is less."

This definition of unemployed, and the use of such a standard for determining welfare or medicaid eligibility have heretofore passed constitutional muster. A three judge court for the Northern District of California held that unemployment may be defined in terms of hours worked and held that the entitlement to welfare benefits may be predi-

cated on such a standard. Macias v. Finch, 324 F.Supp. 1252 (D.C.1970). The court held that the adoption of an employment standard based on terms of hours worked was well within the contemplation of Congress when it considered its delegation of authority to the Secretary of Health, Education and Welfare for the establishment of federal and state public aid programs. The court concluded that the employment requirements were not arbitrary or in violation of the equal protection clause of the Fourteenth Amendment.

This court feels that the current eligibility requirements relating to Kentucky Medicaid benefits are grounded in sound reason and are not impermissibly discriminatory. Plaintiffs argue that it is unfair to permit a man who is employed for twenty-nine hours per week to draw medical aid payments, but to exclude a man who is employed for thirty hours per week from medical aid benefits. Plaintiffs further argue that the hours standard is not related to economic need, as it is quite possible for a man to work in excess of thirty hours per week and remain below the accepted poverty level. The decision as to where and under what circumstances to place the cutoff point for public assistance benefits must be one of the most confounding problems in devising welfare programs. Obviously those persons on either immediate side of the demarcation line will receive seemingly unfair treatment. However, the problem of unfair treatment at the cutoff line will exist no matter what sort of eligibility requirements are promulgated, and would not be solved or necessarily mollified by the adoption of a need standard. The person who makes just enough money to be excluded from the medicaid rolls, in all likelihood, will have as great a need for medicaid as the applicant who makes the maximum amount allowed for eligibility.

Although the challenged amendment may exclude some persons who could show a real need for medicaid, the defendants have sought to devise a scheme which under the prevailing fis-

cal circumstances enables the widest possible coverage to those persons who show the greatest need. The court therefore holds that the sections of the Kentucky Public Assistance Manual which define unemployment and adopt such a definition as an eligibility requirement are not discriminatory nor in violation of the equal protection clause of the Fourteenth Amendment of the Constitution. The court also holds that those persons who are enrolled in federal training programs which pay a real wage and which require more than 30 hours of work or training per week, are employed within the terms of the Manual.