**Larry McNEAL and Lonnie Casey, Appellants,**

v.

**ÁRMOUR AND COMPANY, Appellee.**

Court of Appeals of Kentucky.

Sept. 23, 1983.

Teddy B. Gordon, Michael L. Boylan, Louisville, for appellants.

Robert G. Breetz, Stites & Harbison, Louisville, for appellee.

Before HOWARD, MILLER and REYNOLDS, JJ.

MILLER, Judge.

Appellants bring this appeal from the Jefferson Circuit Court's Rule 12 dismissal of their suit for racial discrimination in employment. KRS Chapter 344. The suit was dismissed for lack of subject matter jurisdiction under KRS 344.270. It appears that Larry McNeal and Lonnie Casey were black employees of appellee, Armour and Company. After warning from their employer for failing to meet "job standards" they were discharged from employment, a discipline which they refer to as "capital punishment." The essence of the contention is that their fate was racially founded in that white employees of like delinquency were not so treated by the employer. In pursuit of their contentions appellants have commenced proceedings for redress at the hands of Armour, *via* (1) the grievance arbitration provisions of their Union Contract; (2) charges with the Equal Employment Opportunity Commission (EEOC) pursuant to 42 U.S.C. § 2000e, *et seq.*, and (3) the instant action filed in the Jefferson Circuit Court pursuant to KRS 344.450. The trial court dismissed the appellants' complaint under the authority of KRS 344.270. Appellants claim error. We disagree and affirm. KRS 344.270 provides as follows:

*Commission procedure exclusive.*—Neither the commission nor any court of this state shall take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance is pending. A final determination of a claim alleging an unlawful practice under this chapter shall exclude any other action or proceeding brought by the same person based on the same grievance.

The initial question we consider is whether the appellants can simultaneously seek redress of alleged racial discriminatory

practices under 42 U.S.C. § 2000e *et seq.* and KRS Chapter 344. This court has not heretofore addressed the issue. The foregoing statute adopts a doctrine of absention, withholding jurisdiction from litigants "while a claim of the same person seeking relief for the same grievance is pending." KRS 344.270. We observe that the Kentucky Civil Rights Act was enacted with the partial purpose of preserving the federal civil rights law by providing for its execution within the state. KRS 344.020(1)(a). Under the Supremacy Clause it could not properly be interpreted to impede the federal proceedings. U.S. Const. Art. VI. Further, it is firmly established that the remedy provided by federal civil rights law is supplementary to any state remedy and therefore it is not necessary to exhaust the latter before pursuing federal avenues. The doctrine of "exhaustion of state remedies" does not obtain in civil rights litigation. *See King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1198 (1968); *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); and *Cloud v. Dietz,* 342 F.Supp. 1146 (E.D.Ky.1971). The rule of comity does not prevent, but instead allows our state to adopt a statute recognizing the supplementary nature of civil rights litigation and thus withhold jurisdiction from persons with pending claims alleging the same grievance under federal civil rights law. Thus we believe a reasonable interpretation of KRS 344.270 is that it was intended to deny jurisdiction to those litigants who would simultaneously seek redress in the federal forum.

We are mindful that Congress has indicated it considers the policy against discrimination to be of the "highest priority." *Cf. Newman v. Piggie Park Enterprise,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1265 (1968). In conformance with this policy it may appear that an aggrieved party should not be easily circumscribed in

pursuit of both federal and state remedies. This is especially true because KRS 344.450 provides somewhat broader relief for litigants than 42 U.S.C. § 2000e *et seq.* in that by reference to KRS 344.020(1)(b) and KRS 344.020(2) it allows claims for damages for humiliation and personal indignity, *see Kentucky Commission on Human Rights v. Fraser,* Ky., 625 S.W.2d 852 (1981), while federal courts have consistently refused to award damages for any sort of intangible injuries in cases brought solely under 42 U.S.C. 2000e *et seq. See Vazquez v. Eastern Air Lines, Inc.,* 579 F.2d 107 (1st Cir.1978).

These principles to the contrary notwithstanding, we simply cannot ignore the plain language of KRS 344.270 and the obviously sound public policy against multiplicity of litigation that it embodies; a public policy that is inherent in our system of justice. See *Massie v. Salmon,* Ky., 277 S.W.2d 49 (1955); CR 13.01 and 42.10; and 1 Am. Jur.2d *Actions* 156, *et seq.* (1962 and reprint 1964). Furthermore, we cannot fail to recognize the enormous burden on employers of defending multiple litigation arising from a singular factual circumstance.[1]

■ Consequently, we hold that a person who has made a complaint of employment discrimination with the EEOC cannot invoke the jurisdiction of a Kentucky court under KRS 344.450 while his claim is pending with the federal body. However, if his claim is not resolved by the EEOC and that body relinquishes jurisdiction or responsibility over his claim by issuing to him what is commonly known as a "right to sue" letter as provided by 42 U.S.C. 2000e–5(f)(1), we hold that the claimant may bring an action in a Kentucky court under KRS 344.450 if he does not elect instead to proceed in a federal court under 42 U.S.C. 2000e *et seq.*

We are not unmindful of the complexity of the law of employment discrimination. See *Egelston v. State University College at Geneseo,* 535 F.2d 752, 754 (2d Cir.1976). Nor are we unmindful of the possibility

---

1. Appellants have not pointed to any differences, factual or otherwise, between their complaints filed under KRS 344 and 42 U.S.C. § 2000e *et seq.* Despite the differences in the particular types of damages recoverable, of course, the objectives of the federal and Kentucky anti-discrimination statutes are substantially the same.

that this complexity may now seem partly responsible for appellants finding themselves in the federal forum. However, in the final analysis, claimants or plaintiffs such as the appellants must be responsible for whatever problems arise because of their choice of forum. In this regard, we have good reason to believe that the appellants have not forfeited their claim for damages for humiliation, personal indignity, and other intangible injuries under KRS 344.450 simply because they have elected to proceed in a federal forum. We see no reason why they cannot assert their claim for all relief available under KRS 344 in a federal court under the doctrine of pendent jurisdiction, which allows federal courts that have jurisdiction of one claim to assume jurisdiction of a separate claim that has no independent federal jurisdictional basis when both claims derive from a common nucleus of operative fact. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also,* 32a Am.Jur.2d *Federal Practice and Procedure* §§ 1246–1260 (1982), and Annot., 5 A.L.R.3d 1040 (1966).

We now turn to the question of whether the action under KRS Chapter 344 may be maintained in light of appellants' simultaneous grievances filed with their Union under the nondiscrimination clause of their collective-bargaining agreement. We believe that said actions may properly be maintained notwithstanding simultaneous pursuit of contractual rights stemming from the Union Contract. Civil rights are a group of rights attendant to citizenship. They belong to all persons and are not necessarily akin to private rights which may emanate from contracts of individual persons. As we have previously noted, Kentucky's Civil Rights Act was enacted to in a measure enforce policy established in federal civil rights law. KRS 344.020. We believe, therefore, that federal decisions on this issue may properly be deferred to for our guidance. Contractual rights are not expressly restricted by KRS 344.270. The United States Supreme Court has held that notions of "election of remedies" are not applicable in civil rights litigation when persons choose to enforce their contractual rights as well as their statutory civil rights. Contractual rights are not displaced merely because a statutory right against discrimination has been provided, both rights are independent in their origin. *See Alexander v. Gardner-Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

We hold that both union contractual rights and rights emanating under KRS Chapter 344 are independent and equally available to aggrieved employees. Simultaneous pursuit of these rights is not restricted by KRS 344.270.

Appellants argue the unconstitutionality of KRS 344.270. As the attorney general was not notified of this assertion the matter is not open for review. *See Blake v. Woodford Bank and Trust Company,* Ky.App., 555 S.W.2d 589 (1977); CR 24.03 and KRS 418.075.

For the foregoing reasons the decision of the Jefferson Circuit Court is affirmed.

All concur.