Sean Ragland, Bolus, Jaggers & Ragland, Thomas Clay, Louisville, KY, for Plaintiff.

Michael A. Luvisi, Woodward, Hobson & Fulton, Louisville, KY, for Defendants.

Amey TIMMONS, Plaintiff,

v.

WAL–MART STORES, INC. and Sam's Wholesale Club, Defendants.

No. CIV. A. 3:97–CV–224–H.

United States District Court, W.D. Kentucky, Louisville Division.

Jan. 19, 1999.

### MEMORANDUM AND ORDER

HEYBURN, District Judge.

The Court now discusses Defendant's Motion to Dismiss Plaintiff's Claim for Punitive Damages and its subsequent motion for directed verdict on the issue of punitive damages.[1] The first motion requires the Court to determine whether the Kentucky Civil Rights Act bars a plaintiff from seeking punitive damages. Because no Kentucky case directly answers this question, the Court must predict how the Kentucky courts would resolve the question. *See Hines v. Joy Mfg. Co.,* 850 F.2d 1146, 1150 (6th Cir.1988). Though the Court concludes that Plaintiff may assert a claim for punitive damages under the Kentucky Civil Rights Act, the facts in this case ultimately require directed verdict for Defendant on the issue.

■ Defendants contend that the remedy provision of the Kentucky Civil Rights Act

---

1. This Memorandum and Order expands upon the reasoning stated prior to and during the trial of this case.

authorizes the recovery only of actual damages, costs, attorney's fees, and injunctive relief, thus preventing a discrimination plaintiff from requesting an award under Kentucky's punitive damage statute. *See* Ky. Rev.Stat. Ann. §§ 411.184 & 411.186. This argument rests on the precise language of the Civil Rights Act's remedy section:

> Any person injured by any act in violation of the provisions of this chapter, shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the law suit. The court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter.

Ky.Rev.Stat. Ann. § 344.450.

While the statute lists certain remedies, it does not provide explicitly for punitive damages. The relevant canon of statutory construction arises out of the Latin phrase *expressio unius exclusio alterius* which Black's Law Dictionary translates as "the expression of one thing is the exclusion of another." Black's Law Dictionary 581 (6th ed.1990). The principle of *expressio unius* means that a statute's mention of specific items implies the intent to omit others. When the law lists actual damages, costs, attorney's fees, and injunctive relief as the available remedies, *expressio unius* dictates that the legislation bars other avenues of redress. Under this line of reasoning, even though § 344.450 does not explicitly bar punitives, an interpretation based upon *expressio unius* would preclude a plaintiff from seeking exemplary damages.

Defendants also argue that *Grzyb v. Evans*, 700 S.W.2d 399 (Ky.1985), adds strength to this interpretation. In *Grzyb* the Kentucky Supreme Court stated that: "Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limit-

ed to the remedy provided by the statute." *Id.* at 401; *cf. Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 817 (Ky.1992) ("The applicable rule of statutory construction is where there is both a specific statute and a general statute seemingly applicable to the same subject is that the specific statute controls."). While not unhelpful, the holding of *Grzyb* runs to the question of which legal claims a plaintiff may pursue, not really to the precise question of which remedies a plaintiff may seek under each theory. Thus, *Grzyb* begs the question of whether § 344.450 permits or prohibits punitive damages.

A more important consideration is that the Kentucky legislature has authorized punitive damages in a manner which would include Kentucky Civil Rights Act cases. In Ky.Rev. Stat. Ann. § 411.184(2) the state legislature made punitive damages available if a plaintiff proves by clear and convincing evidence that a defendant acted with "oppression, fraud or malice."[2] By specifically prohibiting a plaintiff from seeking punitive damages only for breach of contract, *see* § 411.184(4), the General Assembly implied that a plaintiff may seek punitive damages in all other actions. This interpretation receives support from the legislature's guidance that the punitive damage statute "is applicable to all cases in which punitive damages are sought and supersedes all existing statutory or judicial law insofar as such law is inconsistent with the provisions of this statute." § 411.184(5). Thus, the issue in this case is whether the implication arising out of applying *expressio unius* to the remedy provision of the Kentucky Civil Rights Act is strong enough to overcome the state's punitive damage statute. For a variety of reasons, the Court concludes that the implication provided by *expressio unius* is not strong enough.

While Kentucky's high court occasionally describes *expressio unius* as a "primary rule

---

2. The Kentucky Supreme Court has declared unconstitutional the punitive damage statute's definition of malice as applied in a negligent tort case for wrongful death. *See Williams v. Wilson*, 972 S.W.2d 260, 264, 269 (Ky.1998) (finding the "subjective awareness" requirement of Ky.Rev. Stat. Ann. § 411.184(1)(c) unconstitutional under the jural rights doctrine). This Court does not read *Williams* to have removed the punitive damage statute from the books; instead, *Williams* reinstated the pre-existing common law of punitive damages in tort suits alleging grossly negligent conduct. That limited decision does not alter the analysis of this case because an employment discrimination plaintiff alleging disparate treatment must prove intentional conduct.

of statutory construction," *see, e.g., Smith v. Wedding*, 303 S.W.2d 322, 323 (Ky.1957), the state court also repeatedly notes the limitations of the canon. For instance, in *Steinfeld v. Jefferson County Fiscal Court*, 312 Ky. 614, 229 S.W.2d 319 321 (Ky.1950), the Kentucky court explained that it applies the "maxim often, but not universally" and then only "as an aid in arriving at the intention of the legislature." Similarly, in *City of Lexington v. Edgerton*, 289 Ky. 815, 159 S.W.2d 1015, 1017 (1941), the court stated that *expressio unius* constituted a mere "rule of construction, and not of substantive law" for the courts to apply only if the intention of the statute is unclear. And, in *Wade v. Commonwealth*, 303 S.W.2d 905, 907 (Ky.1957), the court went so far as to quote Justice Taft explaining the "narrow and limited manner" in which courts should employ *expressio unius* "for assistance in determining the real intention of the legislature." According to Taft, "[t]his maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set off by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment." *Ford v. United States*, 273 U.S. 593, 611, 47 S.Ct. 531, 71 L.Ed. 793 (1927), *quoted in Wade*, 303 S.W.2d at 907. In sum, *expressio unius* does not necessarily rule the day, particularly when the strong policies of the Kentucky Civil Rights Act suggest a different result.

The Kentucky legislature intended the state law to parallel Title VII.[3] The legislature's statement of general purpose provides important guidance for the proper interpretation of § 344.450. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997) ("it is well-settled that in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, to its object and policy" (internal quotation marks deleted)); *Combs v. Hubb Coal Corp.*, 934 S.W.2d 250,

252 (Ky.1996) ("in construing legislative enactments, courts should look to the letter and spirit of the statute, viewing it as a whole" (internal quotation marks deleted)); *Department of Revenue v. Miller*, 303 Ky. 822, 199 S.W.2d 622, 623 (Ky.1947) ("literal language contained in some parts of a statute in apparent conflict with the general scheme should surrender to the general purpose and intent of the Legislature gathered from all parts of the statute"). Thus, however logical the *expressio unius* argument may seem, the Court should not accept it as controlling if it conflicts with the general purpose of the state Civil Rights Act.

The historical evolution of damages under both state and federal employment discrimination statutes sheds some useful light on the correct interpretation of the Kentucky law. Until 1991, a Title VII plaintiff could seek only back pay. *See* 42 U.S.C. § 2000e–5(g) (providing only for back pay). This historical fact led federal courts in Kentucky to declare that, despite clear language allowing "actual" damages, the Kentucky statute prohibited compensatory damages. In *Ellis v. Logan Co.*, 543 F.Supp. 586, 589 (W.D.Ky. 1982), the court limited a Kentucky law plaintiff to back pay in part because the state legislature "stated that the purpose of the Kentucky Civil Rights Act, KRS Chapter 344, is to effectuate the policies of, *inter alia*, the federal Civil Rights Act." Similarly, in *Berry v. General Electric Co.*, 541 F.Supp. 800 (W.D.Ky.1982), the court applied the same reasoning and barred compensatory damages based on the limits of the federal age discrimination laws.

The turning point came the year after *Ellis* and *Berry*, when Kentucky's intermediate appellate court handed down *McNeal v. Armour and Co.*, 660 S.W.2d 957 (Ky.Ct.App. 1983). In *McNeal*, the court explained that the Kentucky Civil Rights Act did allow compensatory damages because § 344.450 provided "somewhat broader relief for litigants" than the federal law. *Id.* at 958. Accordingly, the federal courts quickly began to recog-

---

**3.** The Kentucky legislature explained the appropriate construction of the Civil Rights Act: "The general provisions of this chapter are: (a) To provide for execution within the state of the policies embodied in the Federal Civil Rights Act of 1964 as amended … and the Civil Rights Act of 1991 as amended …." Ky.Rev.Stat. Ann. § 344.020(1).

nize the divergence of state and federal law on this point by allowing state law plaintiffs to recover damages for humiliation, personal indignity, and other intangible injuries in addition to back pay. *See Mitchell v. Seaboard Sys. R.R.*, 883 F.2d 451, 454 (6th Cir.1989); *Easton v. Louisville and Jefferson County Bd. of Health*, 706 F.Supp. 536, 538–39 (W.D.Ky.1987). In short order, Kentucky's highest court also endorsed this reading of the state statute. *See Meyers*, 840 S.W.2d at 817.

In other words, historically, the courts have interpreted Kentucky's Civil Rights Act either in lock step with federal law or more broadly than federal law. To read the Kentucky statute to prohibit punitive damages would break with this tradition. The tension arises because federal law on the subject of relief for employment discrimination changed dramatically in 1991 when Congress amended the federal Civil Rights Act. These amendments expressly authorized compensatory and punitive damages in addition to back pay. *See* 42 U.S.C. § 1981a(a)(1). The 1991 amendments hold particular meaning because the state legislature explicitly mentioned their role in the proper construction of the Kentucky Civil Rights Act. *See* Ky.Rev. Stat. Ann. § 344.020(1). In other words, the Kentucky General Assembly has stated that the state law should emulate federal law.

Because Kentucky's legislature emphasized that the state law should effectuate the purposes of federal law, this Court must consider briefly the underlying purposes of the congressional decision to add punitive damages to statutory scheme. By allowing punitive damages for Title VII, Congress acted for several reasons. According to the legislative history, our federal lawmakers intended punitive damages to provide incentives for "citizens to act as private attorneys general to enforce the statute" and to "raise the cost of an employer's engaging in intentional discrimination, thereby providing employers with additional incentives to *prevent* intentional discrimination in the workplace before it happens." H.R.Rep. No. 102–40(I), at 65 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 60. Congress explained that any employer who has not understood the injustice

of employment discrimination, after many years of statutory proscription, should face monetary damages. *See* H.R.Rep. No. 102–40(I), at 14–15, 1991 U.S.C.C.A.N. at 552–53. Furthermore, Congress expressed the need to conform damages available for various forms of discrimination by providing Title VII plaintiffs, including especially women and members of religious groups, the same kinds of remedies already available under 42 U.S.C. § 1981 to victims of racial discrimination. *See* H.R.Rep. No. 102–40(I), at 65, 1991 U.S.C.C.A.N. at 603; *see also* H.R.Rep. No. 102–40(II), at 22–23, reprinted in 1991 U.S.C.C.A.N. 694, 715–16.

Finally, and most importantly, Congress emphasized that punitive damages "serve as a necessary deterrent to future acts of discrimination, both for those held liable for damages as well as the employer community as a whole." *See* H.R.Rep. No. 102–40(I), at 69, 1991 U.S.C.C.A.N. at 607; *see also City of Riverside v. Rivera*, 477 U.S. 561, 575, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("the damages a plaintiff recovers contribute significantly to the deterrence of civil rights violations in the future"); *Smith v. Wade*, 461 U.S. 30, 54, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ("Punitive damages are awarded in the jury's discretion to punish the defendant for his outrageous conduct and to deter him and others like him from similar conduct in the future." (internal quotation and alteration marks deleted)). After reading the legislative history, the Court concludes that Congress intended punitive damages to serve as an integral component within the Title VII scheme. Congress believed that without punitive damages Title VII would not achieve its ultimate purpose.

Thus, in order for the state law "to provide for the execution within the state of the policies embodied in ... the Civil Rights Act of 1991," Ky.Rev.Stat. Ann. § 344.020(1), the state law must allow punitive damages. Allowing punitive damage recoveries under state law provides the proper incentives to state law plaintiffs as well as executing the policies of deterrence and conformity embodied in the federal legislation. The argument based on applying *expressio unius* is simply not definitive enough to overcome all the other reasons which support allowing puni-

tive damages in state court discrimination cases. Therefore, this Court predicts that the most persuasive arguments would cause Kentucky courts to allow punitive damages.

The federal and state laws do provide differing standards for the award of punitive damages, but this fact does not shake the Court's conclusion. As noted, Kentucky requires clear and convincing proof of oppression, fraud, or malice. *See* Ky.Rev.Stat. Ann. § 411.184(2). Federal law, on the other hand, caps punitive damages and allows their award only upon proof that the defendant "engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b). While these procedural standards differ, it is the presence of punitive damages which is most important here. This Court must apply the Kentucky standard.

■ At the close of proof Defendants have moved for a directed verdict on the issue of punitive damages. Plaintiff asserts that Defendants' General Manager, Mr. Kimble, lied about his knowledge of Defendants' own anti-discrimination policies. Even if the jury believed that he lied, nothing in the proof suggests that Kimble acted wilfully, maliciously, wantonly or recklessly to discriminate against Plaintiff. Kimble may have made misjudgments; his sloppy communication and his lack of knowledge of the full requirements of Plaintiff's rights may have compounded the problem thus creating legal liability under the Civil Rights Act. However, no evidence suggests that the behavior goes further.[4]

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiff's Claim for Punitive Damages as a matter of law is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for directed verdict on the issue of punitive damages. at the close of proof is SUSTAINED.

---

4. Subsequent to the Court's actual decision, the trial continued to conclusion and the jury returned a Defendant's verdict as to Plaintiff's pregnancy discrimination claim.