**CHILDERS OIL COMPANY, INC., Appellant**

v.

**Bertha L. ADKINS; and Lawrence R. Webster, Appellees.**

No. 2007–SC–000032–DG.

Supreme Court of Kentucky.

June 19, 2008.

---

Lawrence E. Forgy, Jr., Frankfort, Darrell Hall, Whitesburg, KY, Counsel for Appellant.

Lawrence R. Webster, Webster Law Offices, Pikeville, KY, Counsel for Appellees.

Opinion of the Court by Justice NOBLE.

This case is on appeal from the Kentucky Court of Appeals, which affirmed the ruling of the Pike Circuit Court where Appellant, Childers Oil Company, Inc. (Childers), was held liable for age discrimination in employment and had judgment entered against it for compensatory damages, including lost wages and emotional distress, and punitive damages. Childers raises four claims of error: (1) that its motion to dismiss should have been granted as it was not a proper party to the action; (2) that its motion for directed verdict at the close of all evidence should have been granted because Appellee, Bertha Adkins, failed to establish that Childers's reason for laying her off was a mere pretext; (3) that it was error for the circuit court to give an instruction on punitive damages for a cause of action under the Kentucky Civil Rights Act; and (4) that the circuit court erred by not granting Childers's motion for judgment notwithstanding the verdict or motion for a new trial because the award for emotional distress was not allowed under KRS 344.450 or, alternatively, the award was excessive.

## I. Background

Bertha L. Adkins was employed beginning in January 2003 to work at a convenience store called the Double Kwik located in Shelbiana, Kentucky. The identity of the true employer of Adkins was disputed at trial and the evidence conflicted. For example, Adkins was interviewed by and hired by Mona Delong, regional supervisor for Childers, and the employee handbook given to her when she was hired clearly denoted Childers Oil Company, Inc. as the employer, yet her W–2 tax forms and weekly pay checks named her employer as Hometown Convenience, LLC.

Adkins worked as a cashier in the convenience store for seven or eight months. At that time, a restaurant known as the Homecooker was opened in the convenience store, and Adkins was moved into the kitchen of the Homecooker for future work. She was laid off on January 30, 2004. The reason given to Adkins for her termination was that the Homecooker was closing due to lack of business. Adkins requested to be moved back to the front register where she originally worked, but the request was apparently denied. The Homecooker was closed for business on January 30, 2004. It reopened for business the next day when employees from a separate convenience store in Chloe were brought over to work while their store was repaired following fire damage. The Homecooker permanently closed on February 18, 2004. The Double Kwik convenience store closed for business on June 28, 2004, reopened on November 1, 2004, and then closed permanently on January 18, 2005.

A younger, inexperienced female named Sabrina was hired to work as a cashier eleven days prior to Adkins's discharge. Adkins testified that shortly after her discharge she returned to the Shelbiana store and observed a "Now Hiring All Positions" sign in the front window. Adkins also testified that prior to her discharge she had heard comments to the effect that management sought to put "young, pretty, and skinny" girls at the cash registers in order to attract truck drivers. Adkins was 47 years old at the time of her discharge.

On May 17, 2004, Adkins filed suit against Childers in Pike Circuit Court al-

leging age and sex discrimination, though she never pursued the sex discrimination claim. On March 4, 2005, Childers moved for summary judgment pursuant to Rule 56.02 under the Kentucky Rules of Civil Procedure, but the motion was denied. On April 20, 2005, one week prior to the date on which the trial was scheduled to commence, Childers filed a motion to dismiss, alleging for the first time that Adkins had not been an employee of Childers Oil Company, Inc., but rather had been an employee of Hometown Convenience, LLC. An order denying the motion was entered after the trial.

On April 27, 2005, a jury trial was held. The jury returned a verdict in favor of Adkins on her age discrimination claim and awarded her $11,922 for lost wages, $50,000 for "injury caused by the wrongful discharge, including compensation for emotional distress," and $50,000 in punitive damages. On July 20, 2005, the circuit court awarded Adkins's attorney a fee of $6,900.00 to be paid by Childers, and on July 28, 2005, a final judgment incorporating the verdict and the court's attorney fee award was entered. After Childers's post-judgment motions were denied, the corporation appealed to the Court of Appeals, which affirmed the trial court. Childers sought and was granted discretionary review by this Court.

## II. Analysis

### A. Childers Oil Company Was a Proper Defendant

■ Childers based its motion to dismiss on an assertion that Adkins had never been employed by Childers. The original complaint had been filed by Adkins on May 17, 2004, and despite extensive discovery, Childers did not claim it was an improper defendant until April 20, 2005— only one week before the trial was set to begin. By that point in time, however,

Childers had effectively admitted to being the employer of Adkins, and at the very least, there was a material issue of fact for the jury—an issue that was eventually decided against Childers.

As early as August 23, 2004, Childers filed answers to Adkins's first set of interrogatories that indicated Childers had no contention with being named as Adkins's employer. The following answers were submitted among others:

*Interrogatory No. 4(B):* Please state the nature of the Plaintiff's work *for the defendant.*

*Answer:* Employed at the Shelby [sic] doublekwik as a cashier and, later as a deli cook/attendant.

*Interrogatory No. 4(C):* Please list the Plaintiff's job duties for all her positions while *employed by the Defendant.*

*Answer:* Worked as cashier, prepared food, took customer food orders, cleaned in the kitchen, ordered stock and counted inventory.

(Emphasis added.) Childers also responded to the interrogatory, "Please state the name of all the Plaintiff's immediate supervisors *during her employment with the Defendant* . . .", as well as, "Please state any comments that the Plaintiff made to the *Defendant-employer or its agents about her termination."* (Emphasis added.)

Through the entirety of this initial set of interrogatories, Childers was referred to specifically as the employer of Adkins no less than twelve separate times—all without objection. In the same set of questions Childers rejected, at least five times, the use of the words "fired" or "terminated" in reference to Adkins and responded that Adkins was instead "laid off." Childers did object once—to an interrogatory it found to be unduly burdensome. Reading the response to this interrogatory it is

clear that Childers read the questions with great attention and with an eye for objectionable material. Since Childers quibbled in its responses over whether Adkins was fired or laid off, it surely would have raised objection at being referred to as her employer if it believed otherwise.

On September 27, 2004, Childers submitted its first set of interrogatories, which contained the following request:

Interrogatory No. 11: State in complete and exact detail your entire basis in law and in fact for your allegations contained in Paragraph 1 of your complaint, where you state that on or about January 30, 2004, you were wrongfully terminated *from your employment with the Defendant* and that termination was an act of age discrimination and sex discrimination.

(Emphasis added.) Childers's counsel clearly had no issue with referring to the corporation as Adkins's employer. In the same set, Interrogatory No. 14 also refers to Adkins's "employment with the Defendant."

And lastly, the fatal blow to Childers's claim is the motion for summary judgment it submitted on March 4, 2005, roughly five weeks prior to the motion based on the claim it was an improper party. In the memorandum, Childers began its argument with the following:

The only issue in this case is whether or not Childers'[s] decision to terminate Adkins was improperly and unlawfully motivated by reason of age discrimination.

Indeed, the very first sentence of the memorandum, which begins the statement of facts, is the following: "The Plaintiff is forty-eight (48) years of age and was originally hired by the Defendant as a cashier at Defendant's Shelby [sic] store."

It is not reasonable to believe that Childers or its counsel suddenly realized after' months of interrogatories and discovery that it should not be the defendant in this action. By the time Childers had made this motion it had already made an effective judicial admission that it was the employer of Adkins and the proper defendant in this action.

 Even if Childers had not effectively admitted to being the employer, Childers can argue, at best, that a genuine issue of fact had been raised. Evidence was presented at trial by both parties on the issue, and the jury found that Childers was the proper employer and defendant. The evidence supporting this finding included that the employee handbook given to Adkins was clearly labeled as the "Childers Oil Company Employee Handbook of Personnel Policies" and that the person who hired and terminated Adkins was a regional supervisor for the Childers Oil Company. To be sure, Childers entered its own affidavits and items into evidence, which on the surface are no less weighty than those entered by Adkins. However, it is the province of the jury to weigh the evidence and make a finding when a fact is at issue. The jury specifically found that "Bertha Adkins was employed with the Defendant prior to January 30, 2004." There was evidence to support the jury's finding, and it should not be disturbed.

Either by admission or jury finding, Childers Oil Company, Inc. has been found to be the proper defendant to this action, and its argument on this issue ·has no merit. The decision of the Court of Appeals was correct on this issue.

**B. Denial of Directed Verdict Was Proper**

 Childers contends that the circuit court erred when it declined to grant a

motion for a directed verdict on the basis that Adkins failed to establish that her age was the motivating factor for her discharge.

In the absence of direct evidence of discriminatory animus, a plaintiff in an age discrimination case must satisfy the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, a plaintiff is not required to introduce direct evidence of discrimination. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 349 (6th Cir. 1997); *Williams v. Wal–Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky.2005).

A plaintiff can establish a *prima facie* case of age discrimination by proving that she: (1) was a member of a protected class; (2) was discharged; (3) was qualified for the position from which she was discharged; and (4) was replaced by someone outside the protected class. *Kline*, 128 F.3d 337 at 349. In age discrimination cases, the fourth element is modified to require replacement not by a person outside the protected class, but by a significantly younger person. *Williams*, 184 S.W.3d at 496. Childers contends that Adkins did not establish that she was replaced by a significantly younger person, thus failing to satisfy the fourth requirement, or, alternatively, that if the fourth requirement was established, then Adkins failed to show that the reason offered was a mere pretext.

The appropriate standard for review of denial of a motion for directed verdict is set forth in *Lewis v. Bledsoe Surface Mining Company*, 798 S.W.2d 459 (Ky.1990). In determining whether the circuit court erred in failing to grant the motion, all evidence that favors the prevailing party must be taken as true; and the reviewing court is not at liberty to assess the credibility of witnesses or determine what weight is to be given the evidence. *Id.* at 461. As the prevailing party, Adkins is entitled to all reasonable inferences that may be drawn from the evidence. *Id.* The appellate court is limited to determining whether the verdict is " 'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.' " *Id.* (quoting *NCAA v. Hornung*, 754 S.W.2d 855, 860 (Ky.1988)).

Drawing all reasonable inferences from the evidence and viewing that evidence in the light most favorable to Adkins, the Court of Appeals and the circuit court both concluded that the verdict in her favor was neither palpably or flagrantly against the evidence nor the result of passion or prejudice. This Court agrees.

There was testimony that store management had made a deliberate decision to seek to place young females at the cash registers, and the jury was informed of specific comments to that effect. There was testimony that store manager Pauline Combs told employee Eva Brooks that "the company wanted pretty, young girls up front to draw in truck drivers and the 'young ones' went 'up there.' " In addition, a young female employee, Sabrina, was hired only eleven days prior to Adkins's discharge. At least five other persons, all more than ten years younger than Adkins, were hired to work in the store not long after Adkins's discharge. Lastly, although Adkins had originally been hired as a cashier and had held that position for several months, Childers retained the younger, less-experienced Sabrina and discharged the older, more-experienced Adkins.

Under the *McDonnell Douglas* framework, once the employee lays out the *prima facie* case for discrimination the burden shifts to the defendant-employer to

demonstrate a non-discriminatory reason for the adverse employee action. *McDonnell Douglas Corp.*, 411 U.S. at 802–03, 93 S.Ct. at 1824. In this case, Childers's stated reason for discharging Adkins was that the Homecooker would be closing and that Adkins's service would no longer be needed.

 Once the employer has laid out their legitimate non-discriminatory reason for the adverse employee action, the plaintiff employee must be afforded an opportunity to show that the reason offered is a mere pretext for the discrimination. *Id.* at 803–04, 93 S.Ct. at 1825. In light of the evidence and testimony offered it was reasonable for the jury to conclude that Childers's reason for discharging Adkins was a mere pretext: Adkins was already trained and experienced as a cashier, yet Sabrina was hired just days prior to Adkins's discharge, and at least five other younger individuals were hired as cashiers between the time of Adkins's discharge and the store closing. It is not within the authority of an appellate court to weigh the evidence or determine if Childers's reason was, in fact, a mere pretext for discriminatory action. The appellate court need only consider whether the jury could have reasonably concluded that the reason was a pretext such that their verdict is not so palpably or flagrantly against the evidence as to indicate that it was reached as a result of passion or prejudice. In this case, the verdict is not palpably or flagrantly against the weight of evidence. The directed verdict motion was properly denied.

### C. Instruction on Punitive Damages was Improper

 The Court of Appeals noted that the Supreme Court of Kentucky "has held that punitive damages are not available under the Kentucky Civil Rights Act, the underpinning for Adkins'[s] age discrimination suit." The court went on to state that the issue is unpreserved since Childers did not object specifically to the instruction on punitive damages on those grounds. (There was a specific objection to the punitive instruction on the ground that Childers's action did not rise to the level required to warrant a punitive damage instruction.) The court continued by citing to cases where specific objections to jury instructions were required, and then held that the giving of the punitive damages instruction was not a palpable error under CR 61.02.

There is room for argument on both sides of the debate regarding the specificity, or lack thereof, of Childers's objection. While Childers did not specifically raise an objection to the jury instructions on this ground, it did, however, tender its own instructions, which did not include an instruction on punitive damages. In *Fields v. Rutledge*, 284 S.W.2d 659 (Ky.1955), the Court said that the rule of requiring specific objection should not be construed to permit entrapment of a party failing to make an independent objection when the requested instruction clearly presented his position. Regardless of this debate, the Court of Appeals's out-of-hand dismissal of CR 61.02 is problematic.

In *Cobb v. Hoskins*, 554 S.W.2d 886 (Ky.App.1977), the court dealt with an objection to instructions which it described as "marginal at best." The court applied CR 61.02 and stated that "[i]n applying this rule, the palpable error must result from action taken by the court rather than an act or omission by the attorneys or the litigants." *Id.* at 888. In applying CR 61.02 the court in *Cobb* found that "the refusal of the trial court to accept the plaintiff's tendered instruction, coupled with its own erroneous Instruction No. 3, resulted in a manifest injustice." *Id.*

Childers cites also a more recent case, *Transit Authority of River City v. Montgomery*, 836 S.W.2d 413, 415 (Ky.1992), which reaffirmed the same principles regarding CR 61.02.

 So even without specific objection, it is clear that Childers may invoke CR 61.02 and claim palpable error if its substantial rights have been affected and a manifest injustice has resulted from the error. In light of *Cobb*, it appears that the task of the appellate court in review under CR 61.02 is to determine if (1) the substantial rights of a party have been affected; (2) such action has resulted in a manifest injustice; and (3) such palpable error is the result of action taken by the court.

The jury's verdict upon the questionable instruction resulted in a $50,000 judgment against Childers for punitive damages. Clearly the rights of Childers have been affected by having this judgment entered against it.

While it is not always clear when manifest injustice has occurred, the court in *Cobb* above seems to have outlined one such situation: when the trial court rejects one party's tendered instructions and instead gives a different erroneous instruction. In the present case, Childers did, in fact, tender an instruction that did not include an instruction on punitive damages and which was rejected by the trial court.

The case law surrounding the availability of damages in a suit brought under the Kentucky Civil Rights Act has seen much change in the last two and a half decades. The current authority comes from *Kentucky Department of Corrections v. McCullough*, 123 S.W.3d 130 (Ky.2003). In *McCullough*, the Court expressly denied the availability of punitive damages under KRS 344.450, which is the source of Adkins's claim. *Id.* at 139–40. The trial court's instruction allowing punitive damages for an action brought under KRS 344.450 then, after the Supreme Court of Kentucky had expressly denied the availability of such damages, was clearly erroneous. The court concludes that that erroneous instruction resulted in a manifest injustice.

 The last element of the analysis, then, is determining if this palpable error is the result of an error by the trial court or an error by Childers. The duty to give proper instructions lies clearly in the hands of the trial court: "Should a party offer an erroneous instruction upon a proper issue, it is the duty of the court and not the excepting party to prepare a correct instruction in lieu of the defective one." *Murphy v. Harmon*, 291 Ky. 504, 165 S.W.2d 11, 13 (1942).

The source of the erroneous instruction in the present case is the set of instructions tendered by Adkins's counsel. It was the duty of the trial court to prepare an instruction which correctly stated the law, especially since the given instruction was against the clearly stated law set forth by the Supreme Court of Kentucky.

 Childers's substantial rights have been affected; that action is the result of a manifest injustice caused by the trial court's refusal of proffered instructions combined with the giving of an erroneous instruction; such palpable error is the result of the trial court's act. Punitive damages are not an available remedy under KRS 344.450 and the trial court has committed palpable error by allowing them. The decision of the Court of Appeals should be reversed.

### D. The Jury's Award of Emotional Distress Damages was Proper

Childers argues that Adkins is not entitled to damages for emotional distress because KRS 344.450 limits her recovery to

actual damages sustained. Alternatively, Childers argues that Adkins has not proven the four elements of intentional infliction of emotional distress to an extent that would warrant the $50,000 verdict. Both of these arguments are incorrect applications of the law.

■ KRS 344.450 was enacted in 1974, and during the next decade it appeared that compensatory damages for emotional distress would not be recoverable damages under the statute. *See Ellis v. Logan Co.,* 543 F.Supp. 586 (W.D.Ky.1982) (holding that damages for humiliation and embarrassment were not recoverable under KRS 344.450); *Berry v. General Electric Co.,* 541 F.Supp. 800 (W.D.Ky.1982) (same). However, in 1983 the Court of Appeals held that damages for humiliation, personal indignity, and other intangible injuries were recoverable under the statute. *McNeal v. Armour & Co.,* 660 S.W.2d 957, 958–59 (Ky.App.1983). Since then the holding in *McNeal* allowing recovery for damages resulting from humiliation and emotional distress in actions brought under KRS 344.450 has been embraced by this Court. *Meyers v. Chapman Printing Co.,* 840 S.W.2d 814, 817 (Ky.1992). There is no doubt that at this point in time damages for humiliation and emotional distress are recoverable as "actual damages" under KRS 344.450.

Childers's alternative argument is likewise grounded on a misapplied principle. In its brief, Childers bases its alternative argument on case precedent and analysis of the elements of the tort action of intentional infliction of emotional distress (IIED). Based on this analysis, Childers claims that the jury award is excessive because Adkins has not shown that her embarrassment rose to the level of severe emotional distress required by the tort law. Childers may be right that the evidence does not bear out a claim for intentional infliction of emotional distress, but analyzing this jury verdict under that tort law is entirely incorrect. Adkins did not bring an action for IIED; rather she requested an instruction for compensatory damages under the Kentucky Civil Rights Act, which would include emotional distress.

■ As discussed above, it is clear that compensatory damages, including humiliation and emotional distress, are allowable under KRS 344.450. As such the standard of review in this situation is simply whether the trial court abused its discretion by not granting a new trial on the ground that the award of damages was excessive. *Hazelwood v. Beauchamp,* 766 S.W.2d 439, 440 (Ky.App.1989). The standard for determining whether the circuit court abused its discretion by not granting a new trial on the ground that the award of damages was excessive is as follows:

> The amount of damages is a dispute left to the sound discretion of the jury, and its determination should not be set aside merely because we would have reached a different conclusion. If the verdict bears any relationship to the evidence of loss suffered, it is the duty of the trial court and this court not to disturb the jury's assignment of damages.

*Id.* (citations omitted).

Childers has argued correctly that the evidence supporting Adkins's claim for emotional distress is not strong. The only evidence specifically supporting the claim is Adkins's own testimony on the witness stand. However, unless the verdict bears no relationship to the evidence, it should not be set aside. The assessment of damages is a matter left in the hands of the jury, and their decision should be disturbed only in the most egregious circumstances.

Furthermore, the jury instructions clearly stated that the jury award was to be based on "damages for injury caused by the discharge, *including emotional distress.*" (Emphasis added.) Of course, the Court does not have a dissertation issued by the jury explaining their reasoning in full detail, but the wording of this instruction leaves open the possibility that Adkins, in fact, received nothing at all for her emotional distress. The jury awarded Adkins a total of $50,000 for damages resulting from the discharge, and the Court has no way of knowing how much of that award was based on emotional distress and how much was based on other damages which the jury determined. There was enough evidence to support some finding of emotional distress as well as other types of damage, and the award is not so disproportionate to the evidence so as to warrant the verdict being set aside or the order for a new trial.

### III. Conclusion

For the foregoing reasons, the decision of the Court of Appeals regarding the denial of the motion to dismiss for naming an improper party, the denial of the motion for directed verdict, and the denial of the motion for judgment notwithstanding the verdict or for a new trial is affirmed. The decision of the Court of Appeals affirming the circuit court's instruction on punitive damages is reversed, and the matter is remanded to the trial court for entry of a judgment in conformity with this opinion.

All sitting. All concur.