**Kathleen BARTON, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

**No. 3:00CV–341–H.**

United States District Court,
W.D. Kentucky,
at Louisville.

Oct. 29, 2001.

James M. Bolus, Jr., Bolus & Ragland, Louisville, KY, for plaintiff.

Charles Laurence Woods, III, Julie Cheatham Foster, Frost Brown & Todd, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Defendant, United Parcel Service, Inc. ("UPS"), has moved for summary judgment on Plaintiff's claims for hostile work environment, retaliation and punitive damages under the Kentucky Civil Rights Act, located at K.R.S. §§ 344.010 *et seq.* The Court has discussed the case in conference with counsel, has thoroughly reviewed the memoranda, and upon consideration of this motion will view the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### I.

Plaintiff began working as a package sorter for Defendant in 1997. In 1999 she complained to a supervisor three or four times about a co-worker having made sexually explicit comments to her. The co-worker was reprimanded and the harassment ceased.

In late 1999, Plaintiff moved to a department called the Red Belt line. By the Court's count, Plaintiff complains of eight specific events and some more general sexual harassment accompanying those events. These events occurred over a five-month period. In late 1999 Plaintiff received a picture of a naked man. In January 2000, co-workers sent her a pornographic picture of two women together in a provocative way. A number of the co-workers used profanity and suggested Plaintiff was aroused by the picture, and one co-worker simulated cunnilingus. Plaintiff did not bring this incident to a supervisor's attention, but rather directed her complaint to the offending co-workers.

In March co-workers sent her an adult toy and yelled comments about how it could be used. Plaintiff states that she intended to report this incident to a supervisor, Mike Vittirow, but changed her mind after hearing one of the offending co-workers jokingly recount that incident to Vittirow. Plaintiff also witnessed that co-worker simulate cunnilingus. Vittirow saw this also, but receiving no complaint from Plaintiff, took no action. In addition, on three occasions during this time, Plaintiff witnesses a co-worker feigning masturbation on a pole.

The final incident occurred on April 18. Co-workers had sent Plaintiff a pornographic centerfold photo. She complained to a supervisor, David Garrett who admonished the co-workers but took no formal disciplinary action. Thereafter, the sexual harassment stopped, but the co-workers sent mis-sorted packages, apparently out of spite. Plaintiff complained to Garrett that week, and again the following week, but the mis-sorts continued. Also, Plaintiff complained to Garrett that a co-worker used profanity and told her "you suck." Garrett took no action.

On April 27, an unknown co-worker spat on Plaintiff. She complained to the highest-ranking UPS manager in Louisville, Gary Aston, who then ordered an investigation. To assist the investigation, he asked Plaintiff to prepare a written memorandum of her complaints. Plaintiff prepared a memorandum dated April 30, which provided greater detail and context for the incidences of sexual harassment. This seems to be the date on which top UPS officials were told of all the actions.

During the course of its investigation, Defendant did not identify specific responsible persons, and did not discipline or reprimand any employees. However, investigators did question those involved. Plaintiff believes that the investigation's results show that Defendant has no serious policy against sexual harassment.

After the investigation the cursing stopped but the mis-sorts kept coming. Moreover, on May 9, a co-worker again threatened Plaintiff. She reported the threat to Bill Byrley of UPS Human Resources. After a meeting regarding the complaint, Byrley stated that he could not fire people for such actions because the employees' union would just bring them back. Plaintiff was very dissatisfied with this response.

Byrley decided that it would be best to transfer Plaintiff from the Red Belt to the Brown Belt, which involved similar work conditions and compensation. The transfer took place on May 19. Plaintiff has continued on the Brown Belt to this date and has suffered no further sexual harassment.

## II.

Because the Kentucky Civil Rights Act was based upon, and is virtually identical to, Title VII of the federal Civil Rights Act of 1964, the Court will apply a Title VII analysis. *See, e.g., Mills v. Gibson Greetings, Inc.,* 872 F.Supp. 366, 371 (E.D.Ky. 1994); *Harker v. Federal Land Bank of Louisville,* 679 S.W.2d 226, 229 (Ky.1984). The Court must determine whether sufficient evidence supports the claim that a hostile work environment existed and, if so, whether Defendant is liable for it.

To succeed on a claim against for hostile work environment, a plaintiff "must show that (1) she is a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment

unreasonably interfered with her work performance and created a hostile work environment; and (5) [the employer] knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Blankenship v. Parke Care Centers, Inc.,* 123 F.3d 868, 872 (6th Cir.1997), *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). A hostile work environment must be both objectively and subjectively offensive, and when evaluating employer liability, a court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–24, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Supreme Court has set forth these standards "to ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quotation, citation omitted).

Plaintiff alleges a series of specific harassing actions over a five-month period. These acts of sexual harassment were accompanied by other related acts, which did not contain sexual innuendo, but which became part of the overall pattern of harassment. All of the acts are objectionable and the evidence suggests that Plaintiff was greatly bothered by them. Defendant argues, with some merit, that the acts are not so objectionable or numerous to constitute a hostile work environment. Nevertheless, the Court concludes that these individual acts are sufficiently severe and are sufficient in number over a short time that a reasonable jury could find a hostile work environment.

### III.

This inquiry leads to the second part of the issue. In *Blankenship, supra,* the Sixth Circuit noted that

> [w]hen the harasser is a co-worker, the standard for determining employer liability is markedly different from that applicable to supervisors, and is not based upon the doctrine of *respondeat superior* .... [T]he employer's liability in cases of co-worker harassment is direct, not derivative; the employer is being held directly responsible for its own acts or omissions. Thus, when an employer responds to charges of sexual harassment, the employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.

*Id.* at 873 (quotations, citations omitted) (emphasis original). Thus, the Court must decide whether a reasonable jury could find from the evidence that Defendant manifested "indifference or unreasonableness," sufficiently so as to indicate "an attitude of permissiveness that amounts to discrimination." *Id.* It is undisputed that Defendant took corrective action which ended the harassment. The test of Defendant's response, however, is whether it took *"prompt and appropriate* corrective action" to end the harassment. *Id.* at 872 (emphasis added).

▮ Plaintiff complains that Defendant did not deal severely enough with the offending employees, and that its action was therefore not appropriate. However, the focus of this part of Title VII and state laws which resemble it is upon prevention and cessation of harassment, not punishment of offenders. *See, e.g., Smith v. Beverly Health & Rehabilitation Services,* 978 F.Supp. 1116, 1125 (N.D.Ga. 1997) ("Title VII does not per se require employers to terminate employees who allegedly contribute to a hostile work environment."). Thus, where an employer takes prompt action to transfer an employee to a non-hostile environment, that action is generally appropriate and therefore sufficient to meet its legal obligations. *See, e.g., Farley v. American Cast Iron Pipe Co.,* 115 F.3d 1548, 1555 (11th Cir. 1997) (holding that employer's transfer of complainant to another department was adequate to end harassment, although transfer was not "remedy of [complainant's] choice"); *Buchanan v. Sherrill,* 51 F.3d 227, 229 (10th Cir.1995) (holding that employer's offer to transfer complainant was appropriate to end harassment); *Nash v. Electrospace System, Inc.,* 9 F.3d 401, 404 (5th Cir.1993) (holding that transfer of complainant "represents not retaliation, but an act that insulated her from further contact with [harasser]."); *but see Conner v. R.H. Barringer Distrib. Co.,* 152 F.Supp.2d 856, 860–61 (M.D.N.C.2001) (holding that employer's alteration of complainant's working shift in order to help her avoid harassing co-worker was detrimental to complainant and amounted to constructive discharge).

Here, the last event of sexually explicit harassment took on place on April 18. After Garrett spoke with co-workers the sexually explicit harassment ceased and the general harassment commenced. After being spit on by a fellow employee about April 27, Plaintiff initiated a more formal complaint. Defendant initiated an investigation promptly. When further threats occurred, Defendant acted just as promptly and appropriately to remove Plaintiff from those who might be responsible. On these facts alone, Defendant's failure to discipline or terminate the offenders may not present a jury issue as to Defendant's indifference.

However, in this case, a reasonable jury could conclude from the evidence that UPS supervisors were well aware of the com-

ments and sexually hostile atmosphere exhibited by Plaintiff's co-workers *before* her written complaint of April 30. Moreover, UPS supervisors may have known early on that these actions bothered Plaintiff. Moreover, their actions may have demonstrated condoning the sexually charged atmosphere rather than opposing it. For these reasons, this is a close case, and a jury should decide whether UPS knew or should have known before April 30, 2000, that Plaintiff's work environment was both subjectively and objectively hostile but failed to act promptly and appropriately.

## IV.

■ Plaintiff also alleges that Defendant is liable for her co-workers' retaliation against her for complaining to a supervisor. In order to establish a claim of retaliation, Plaintiff must prove that (1) she engaged in an activity protected by Title VII, (2) the exercise of that protected right was known to Defendant, (3) *Defendant thereafter took an employment action adverse to Plaintiff, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor,* and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000) (emphasis added). Because Plaintiff alleges no retaliation by a supervisor, she must show that Defendant took an employment action adverse to her.

■ In order to establish an adverse employment action, a plaintiff must show "[a] significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In its analysis of what constitutes a "materially adverse" employment action, the Sixth Circuit has noted that such a change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 886 (1996) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)).

The Court of Appeals for the Sixth Circuit has never conclusively ruled whether an employer can be liable for co-workers' retaliatory harassment, though in dicta it has suggested that one can. *See Morris, supra,* 201 F.3d at 791. Meanwhile, other circuit courts are split. *See, e.g., Richardson v. New York State Dept. of Correctional Service,* 180 F.3d 426, 446 (2d Cir.1999) ("Just as an employer will be liable in negligence for a racially or sexually hostile work environment created by a victim's co-workers if the employer knows about (or reasonably should know about) that harassment but fails to take appropriately remedial action, so too will an employer be held accountable for allowing retaliatory co-worker harassment to occur if it knows about that harassment but fails to act to stop it.") (citations omitted); *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1264 (10th Cir.1998) ("[C]o-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim."); *Knox v. State of Indiana,* 93 F.3d 1327, 1334 (7th Cir.1996) (extending Title VII to co-worker retaliatory harassment where employer has actual or constructive knowledge and fails to act). *Cf. Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 243 (4th Cir.1997), *cert. denied,* 522 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998) (finding no adverse employment action where employer instructed co-workers to ostracize and spy upon employee who had engaged in protected activity); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.), *cert.*

*denied,* 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997) ("Hostility from fellow employees, having tools stolen, and resulting anxiety, without more, do not constitute ultimate employment decisions, and therefore are not the required adverse employment actions."); *Alexander v. Principi,* 16 Fed.Appx. 755, 2001 U.S.App. LEXIS 18098 (9th Cir.2001) ("[A]lleged verbal attacks and demeaning conduct [by co-workers] cannot constitute an adverse employment action in the absence of some tangible harm."). For purposes of this motion, the Court will assume that an employee's individual retaliation could be actionable against the employer in special circumstances where the employer assented to it or consciously ignored it.

■ In our case, the employee retaliation was not sufficiently severe and Defendant's response was sufficiently swift that, under any standard, Plaintiff cannot sustain a retaliation claim. The retaliation consisted of several threats by a co-worker and the sending of many mis-sorts after Plaintiff complained of sexual harassment to a supervisor on April 18. These actions did not so disrupt or materially change Plaintiff's job so as to constitute an adverse employment action. Moreover, after a more formal complaint on April 30 and after continued mis-sorts, Byrley concluded that a transfer was the only effective solution. Plaintiff has received no further threats since the transfer. As noted above, Title VII does not require an employer to punish or discipline an offending employee. *See Smith v. Beverly Health & Rehabilitation Services, supra.* Defendant's action ended the offending conduct, and thus accomplished the purposes of Title VII. For these reasons, Plaintiff has not presented evidence upon which she can base a retaliation claim.

### V.

■ Finally, Plaintiff asks for punitive damages under K.R.S. § 344.450. Kentucky's state and federal courts have differed on the question whether the Kentucky Civil Rights Act provides for punitive damages. In *Timmons v. Wal-Mart Stores, Inc.,* 33 F.Supp.2d 577 (W.D.Ky.1999), this Court reasoned that Kentucky's general punitive damages statute, K.R.S. § 411.184, authorizes punitive damages in all actions save those for breach of contract, notwithstanding the omission of punitive damages language in K.R.S. § 344.450. The Court of Appeals of Kentucky agreed with this analysis in *Kentucky Dept. of Corrections v. McCullough,* 2000 Ky.App. LEXIS 57 (unpublished opinion). The United States District Court for the Eastern District of Kentucky and Court of Appeals for the Sixth Circuit have reached the opposite conclusion. *See Messick v. Toyota Motor Mfg., Ky., Inc.,* 45 F.Supp.2d 578 (E.D.Ky.1999); *Lewis v. Quaker Chemical Corp.,* 2000 WL 1234356, 2000 U.S.App. LEXIS 22321 (6th Cir.2000) (unpublished opinion). Fortunately, the Supreme Court of Kentucky has offered to resolve this question. *See Kentucky Dept. of Corrections v. McCullough,* 2001 Ky. LEXIS 37 (Ky. Feb. 14, 2001). For purposes of this motion for summary judgment, the Court will assume that punitive damages may be available.

As noted above, K.R.S. § 411.184 authorizes punitive damages "in all cases in which punitive damages are sought," breach-of-contract claims excepted. However, a plaintiff may recover punitive damages "only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." K.R.S. § 411.184(2).

Here, it is a very close case whether Defendant even "manifested indifference or unreasonableness in light of the facts

[it] knew or should have known." *Blankenship, supra,* at 873. Plaintiff has not introduced clear and convincing evidence that Defendant acted with oppression, fraud or malice. While, at most, a reasonable jury might find that Defendant acted with indifference toward working conditions that Plaintiff reasonably found to be hostile, a reasonable jury could not find, under the facts presented, that Defendant acted oppressively or maliciously.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendant has moved for summary judgment. Having considered the issues and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion as to Plaintiff's claim for hostile work environment under the Kentucky Civil Rights Act claim is DENIED.

IT IS FURTHER ORDERED that Defendant's motion as to Plaintiff's retaliation claim is SUSTAINED and that claim is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's motion as to Plaintiff's punitive damages claim is SUSTAINED and that claim is DISMISSED WITH PREJUDICE.