**Stephanie GREGO, Plaintiff,**

v.

**MEIJER, INC., Defendant.**

**Civil Action No. 3:00CV–327–H.**

United States District Court,
W.D. Kentucky,
at Louisville.

Dec. 24, 2002.

---

678

Grant Michael Helman, Stuart A. Scherer, Smith & Helman, Louisville, KY, for plaintiff.

Donna King Perry, Erin MacCraken Roark, Woodward, Hobson & Fulton, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Plaintiff, Stephanie Grego, filed suit against Defendant, Meijer, Inc., her former employer, alleging various claims predicated on several instances of alleged sexual harassment that occurred during her employment. Defendant has moved for summary judgment on each of Plaintiff's remaining claims for hostile work environment, negligent supervision, intentional infliction of emotional distress, and punitive damages.[1]

---

1. Plaintiff's initial complaint also alleged claims for breach of implied contract, breach of an implied covenant of good faith and fair dealing, wrongful imprisonment, and assault and battery which the Court previously dismissed as a matter of law pursuant to Fed. R. Civ. Pro. 12(b)(6).

In response, Plaintiff has abandoned her claim for intentional infliction of emotional distress,[2] but contends that Defendant's motion as to her remaining claims should be denied. The Court will consider each of the remaining claims in turn.

## I.

For the purposes of deciding this motion, the Court will consider all facts alleged by Plaintiff employee as true. *See Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 747, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

Plaintiff began working at Meijer's Springhurst store in Louisville, Kentucky on February 23, 1998, and remained employed there until April 25, 1998. At some point during her short tenure at Meijer, two male individuals, described by Plaintiff as "foreign" were transferred into Plaintiff's department. Although Plaintiff could not recall the names of these individuals, Defendant identified the two men as Hadiya Sall and Lemine Ouldhanni. After Sall and Ouldhanni entered Plaintiff's department they began making offensive and demeaning sexual comments and gestures toward Plaintiff. Plaintiff stated that this conduct was "ongoing" until she quit in April. (Grego Dep. at 45.) Plaintiff described most of the conduct generically. For instance, she stated that both male coworkers winked at her, made kissing faces, asked her out, touched her shoulders and back, and indicated that they would like to have sex with her. Although Plaintiff could not recall specific details about the majority of the alleged harassment, she was able to recall two very specific instances of sexually inappropriate behavior. The first instance occurred when Sall approached Plaintiff one day while she was working at the deli counter and told her that: "I'd like you to ride me like a horse, or a bus ... so you can have my baby." (Grego Dep. at 37.) The second specific instance occurred sometime later when Ouldhanni followed Plaintiff into a walk-in freezer. Plaintiff went into the freezer to retrieve a ladder and when she turned around to leave Ouldhanni stood in front of the door and would not let her out. After Plaintiff threatened to hit him with the ladder, Ouldhanni cleared the way and permitted Plaintiff to exit the freezer. Plaintiff did not return to work after the freezer incident.

Throughout this time period, Plaintiff repeatedly indicated to Ouldhanni and Sall that she did not appreciate their sexual remarks, gestures, and touching. After Sall made the "bus" comment, Plaintiff reported the incident to her immediate supervisor, Michael Burns, within at least a week, possibly sooner.[3] Burns told Plaintiff that he would look into the matter. Burns's report, dated over a month after the alleged harassment occurred, indicates that at some point he confronted Sall with Plaintiff's allegations, told Sall that his comments were inappropriate, and asked Sall to leave Plaintiff alone in the future. Sall did not deny making the comment to Plaintiff. Sometime after Plaintiff made her initial complaint, she approached

---

**2.** Plaintiff has elected to proceed against the Defendant under the Kentucky Civil Rights Act instead of relying on this "gap-filler" tort. (Pl.'s Resp. Mem. at 11–12 n.5.) Accordingly, the Court will sustain Defendant's motion as it relates to the intentional infliction of emotional distress claim without discussing the substantive merits of Defendant's arguments.

**3.** Plaintiff's report complied with Mejier's employee manual which directs any employee that believes he or she has been subjected to sexual harassment to "immediately report the information to your first assistant, unit director or you may contact the Meijer Response Line, 1–800–524–8003." (Pl.'s Dep. Ex. 1 at 52.)

Burns a second time about the harassment and reported, this time in less specific detail, the ongoing nature of the sexually harassing behavior she was experiencing in the deli department. There is no official record of this second report. Plaintiff states that the harassment continued even after she reported the conduct to Burns. Plaintiff does not recall ever speaking with Burns about the reports. After the freezer incident, Plaintiff went to the human resources department and filled out another complaint. Human resources personnel indicated to Plaintiff that Meijer wanted her to stay with the company. Plaintiff decided not to return, however, because she had learned from a co-worker that Ouldhanni and Sall had been harassing at least one other female employee, and she did not feel comfortable working for a company that would just move an alleged harasser to another department.

The record does seem to indicate that Plaintiff was not the only female employee who complained about Ouldhanni or Sall's sexually harassing behavior during the relevant time period. Burns stated that he: "had a lot of girls or women come up to me and complain about them." (Burns's Dep. at 24.) Burns documented one such complaint involving a bakery worker named Cleo. According to Burns's report, Sall had an erection and came up behind Cleo and rubbed it up against her back. It is unclear exactly what action, if any, Defendant took in response to the other complaints and reports of sexual harassment. It is also unclear if any of the other complaints occurred before Plaintiff terminated her employment.

## II.

■ This Court will apply the federal standard for evaluating Plaintiff's claims since the standards for proving sex discrimination and harassment under the Kentucky Civil Rights Act reflect those of Title VII. *See Smith v. Leggett Wire Co.,* 220 F.3d 752, 758 (6th Cir.2000); *Meyers v. Chapman Printing Co., Inc.,* 840 S.W.2d 814, 821 (Ky.1992). Courts have recognized two types of sexual harassment claims: *quid pro quo* cases, where a supervisor ties a request for sexual favors to the prospect of promotion or demotion; and hostile work environment cases, where sexual remarks or attentions are so severe or pervasive as to create an objectively offensive atmosphere. *See Burlington,* 524 U.S. at 751, 118 S.Ct. 2257; *Blankenship v. Parke Care Ctrs., Inc.,* 123 F.3d 868, 872 (6th Cir.1997). Plaintiff's claim is for the latter.

■ Hostile work environment cases further distinguish between supervisor harassment and co-worker harassment. *Blankenship,* 123 F.3d at 872. Plaintiff's case is one of co-worker harassment. To prevail on a claim of co-worker harassment Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was subjected to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) Defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. *Blankenship,* 123 F.3d at 872. The first three elements of the *Blankenship* standard appear to be satisfied, and Defendant does not contend otherwise. Thus, Plaintiff's hostile work environment claim turns on the whether she can satisfy the fourth and fifth elements.

## A.

■ A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule,

and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir.2000). In determining whether the alleged harassment is severe, pervasive and extreme enough to be cognizable, the Court must examine the conduct in the aggregate, not in a disjointed piecemeal fashion. "[T]he issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Williams v. General Motors Corp.,* 187 F.3d 553, 562 (6th Cir.1999) (emphasis in original). "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Bowman,* 220 F.3d at 463 (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367.)

■ Plaintiff alleges that the harassment by Sall and Ouldhanni was on-going from the time they were transferred into her department until she quit several weeks later. The on-going nature of the harassment coupled with Sall's crude and demeaning comment about Grego "riding him like a bus," and Plaintiff's encounter with Ouldhanni in the freezer could be viewed by a jury not only as humiliating and offensive but also physically threatening. Under the facts as alleged in this case, viewed in their entirety, a rational trier of fact could conclude that Plaintiff was subjected to a hostile work environment. The actions and remarks were severely hostile and even threatening. They appear pervasive for at least a limited time. At a minimum, the allegations raise a question of fact for the jury and are not proper for the Court to determine on summary judgment.

### B.

■ The sixth element necessary for Plaintiff to establish the existence of a prima facie case of sexual harassment by a co-worker is the existence of respondeat superior liability. *See Kauffman v. Allied Signal, Inc.,* 970 F.2d 178, 183 (6th Cir. 1992). Plaintiff must show that Defendant knew or should have known of the sexual harassment and failed to implement prompt and appropriate corrective action. *Courtney v. Landair Transport, Inc.,* 227 F.3d 559, 564 (6th Cir.2000). "When an employer responds to charges of co-worker sexual harassment, the employer can be liable only if its response manifests indifference or unreasonableness in light of the fact the employer knew or should have known." *Blankenship,* 123 F.3d at 873. "The act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment." *Id.*[4]

Defendant argues Plaintiff cannot prevail on this element because the facts es-

---

4. Two related facts appear clear. First, Defendant had established a procedure for employers to report work place harassment and, second, Plaintiff and perhaps other employees had taken advantage of the procedure to make such reports.

tablish that Defendant responded to Plaintiff's complaint with prompt corrective action. While the facts do indicate that Defendant responded to Plaintiff's complaint by speaking to one of the alleged harassers, this does not end the inquiry. The real issue in this case is the reasonableness of Defendant's actions in light of the facts Defendant knew or should have know about the alleged harassment. Plaintiff alleges that she reported the alleged harassment at least twice to her immediate supervisor before she terminated her employment, and that the harassment continued to some degree even after her reports. Furthermore, there is some evidence from which a jury could conclude that Defendant should have been aware that other women were also being harassed.[5] Based on these facts, it would be possible for a jury to determine that the harassment was of a sufficient level and type that Defendant's attempts at correcting the harassment were unreasonable and insufficient. Plaintiff has presented triable jury issues.

### III.

Plaintiff also alleges a claim of negligent supervision against Defendant. To prevail on this claim, Plaintiff must prove that Defendant failed to exercise reasonable care in the hiring and retention of Sall and Ouldhanni, and that this failure proximately caused her injuries. *See Oakley v. Flor–Shin, Inc.*, 964 S.W.2d 438, 442 (Ky.App.1998). Defendant advances two independent attacks on Plaintiff's negligent supervision claim: (1) that Plaintiff has produced no evidence suggesting that defendant knew or should have known Sall and Ouldhanni posed an unreasonable risk of harm to Plaintiff; and (2) that the exclusivity provision of the Kentucky Workers' Compensation Act, KRS 342.690(1), bars this type of negligence-based claim against Defendant.

Defendant's first argument fails for reasons already explained by the Court in this opinion. In this case, there is evidence from which a reasonable jury could conclude that Defendant knew or should have known that Sall and Ouldhanni were harassing other women, and therefore, that they might also harass Plaintiff. From a evidentiary standpoint, Plaintiff has presented enough evidence to proceed against Defendant under a claim of negligent supervision.

Defendant's second argument that Plaintiff's claim is barred by the exclusivity provision of the Kentucky Workers' Compensation Act is more problematic. The parties have not cited, and the Court has been unable to locate, any Kentucky case law dealing with this precise point of law.[6] Thus, this Court must predict how the state's highest court would rule.

---

**5.** Defendant argues that the Court cannot consider Burns's deposition about the other reports of harassment because it is inadmissible hearsay. The Court concludes, however, that the written report appears to be admissible under the business records exception, and that the verbal reports of harassment are not technically hearsay because they are not being used to assert the truth of the matter asserted, but rather to show that Defendant was on notice of a fact.

**6.** In *Turner v. Pendennis Club*, 19 S.W.3d 117 (Ky.App.2000), a female African–American employee brought an action against her employer alleging claims of race and gender discrimination as well as a claim for negligent training and supervision. The trial court dismissed the negligent supervision claim on the ground that Kentucky does not recognize such a tort. While the court of appeals held that the trial erred in summarily dismissing the claim due to a misconception that the tort is non-existent in Kentucky, it explicitly withheld judgment as to whether the plaintiff could viably pursue such the claim in her circumstances.

*Dinsmore Instrument Co. v. Bombardier, Inc.*, 199 F.3d 318, 320 (6th Cir.1999).

The Kentucky Workers' Compensation Act, KRS 342.690(1) provides:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter *shall be exclusive* and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.

KRS 342.690(1) (emphasis added). The statute and Kentucky case law interpreting the statute make it clear that the Workers' Compensation Act provides the exclusive remedy where a covered employee is injured by her employer's negligent actions. *See, e.g., Shamrock Coal Co., Inc. v. Maricle*, 5 S.W.3d 130 (Ky.1999) (holding that coal workers' claim that mine owner was negligent, careless and reckless in its mining operations was barred under exclusivity provision of Workers' Compensation Act); *Hardin v. Action Graphics, Inc.*, 57 S.W.3d 844, 846 (Ky.App.2001) (holding that exclusivity provision of Workers' Compensation Act barred wife's loss of consortium claim); *Edwards v. Louisville Ladder*, 957 S.W.2d 290, 294 (Ky.App.1997) ("It has long since been held that the advent of Kentucky's workers' compensation system 'practically abolished the common law relating to the subject of tortious liability as between the employer and the employee ....'") (citing *Morrison v. Carbide & Carbon Chemicals Corp.*, 278 Ky. 746, 129 S.W.2d 547 (1939)).

Based on the plain language of KRS 342.690(1) and the Kentucky courts' long history of interpreting the Workers' Compensation Act to prohibit tort actions grounded in negligence between an employer and employee, this Court concludes that the exclusivity provision of Kentucky's Workers' Compensation Act bars negligent supervision claims between an employer and employee. The Sixth Circuit reached a similar conclusion in an unpublished opinion, *Bischoff v. Sears, Roebuck & Co.*, No. 87–6173, 1988 WL 114804 at *2 (6th Cir. Oct.28, 1988):

> This statute [KRS 342.690(1)] makes it clear that the worker's compensation act provides the exclusive remedy for Ms. Diamond's death even if Kentucky does recognize the tort of negligent hiring and retention and even if Bischoff [plaintiff] can prove that Sears [defendant] was negligent in its hiring and retention of Mr. Harris [plaintiff's co-worker and murderer].

> .     .     .     .     .

> The District Court was clearly correct in ruling that the exclusive remedy for damages ... was pursuant to Kentucky's Worker's Compensation Act.

*Id.*

Plaintiff argues that from a technical standpoint, Defendant waived its right to assert the Workers' Compensation Act exclusivity defense by failing to assert it in either its answer or its Rule 12(b)(6) motion to dismiss. Such a failure, however, is not necessarily fatal. "Failure to raise an affirmative defense by responsive pleading does not always result in waiver." *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir.1997). The purpose of Fed. R. Civ. Proc. 8(c) is to place the opposing party on notice of the affirmative defense so she can effectively respond to it. *See id.* This is not a situation where Defendant attempted to raise the defense on the eve of trial. Plaintiff had ample opportunity to consider and fully respond to this defense in its summary judgment opposition. While Defendant should have been more diligent in

raising this defense, the Court does not believe Plaintiff has been prejudiced by Defendant's failure to raise the Workers' Compensation Act exclusivity defense earlier in these proceedings.

### III.

■ Finally, the Court addresses Defendant's argument that the Kentucky Civil Rights Act (the "Kentucky Act") precludes recovery for punitive damages. There is no binding Sixth Circuit or Kentucky Supreme Court precedent directly on-point as to punitive damages under the Kentucky Act. To state it mildly, the law as it relates to the availability of punitive damages under the Kentucky Act is in a state of flux.

In *Kentucky Dep't of Corrections v. McCullough*, 2000 WL 707953, 2000 Ky. App. LEXIS 57, *18–19, No.1998–CA–001403–MR, 1998–CA–001422–MR (Ky. App. May 26, 2000), the Kentucky Court of Appeals held that punitive damages were recoverable under the Kentucky Act in employment discrimination cases, and thankfully the Kentucky Supreme Court granted discretionary review to consider this issue. *See Kentucky Dep't of Corrections v. McCullough*, 2001 Ky. LEXIS 74, 2001–SC–0146–D (Ky. April 18, 2001). The Kentucky Supreme Court, however, has yet to issue an opinion. Thus, this Court must again predict how the Kentucky Supreme Court will rule on this issue.

The Act itself is silent concerning the availability of punitive damages. It does, however, provide that:

> Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and recover the actual damages sustained, together with the costs of the law suit. The court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter.

KRS 344.450. Relying on the cannon of statutory construction, *"expresio excluso alterius,"* *i.e.* the enumeration of particular things excludes others not specifically mentioned, Defendant argues that the fact that the General Assembly listed actual damages and attorney's fees means that it specifically intended that punitive damages not be recoverable for violations of the employment discrimination provisions of the Act. Defendant further argues that the General Assembly amended KRS 344.660(1) to specifically provide for punitive damages in housing discrimination cases, but did not so amend KRS 344.450, thereby again evincing its desire to preclude the availability of such damages in employment discrimination cases.

This Court has previously considered the issue of punitive damages under the Act in *Timmons v. Wal–Mart Stores, Inc.*, 33 F.Supp.2d 577 (W.D.Ky.1999). In *Timmons* this Court held that punitive damages are recoverable under § 344.450. In so doing, the Court found that the Kentucky Act was modeled after and interpreted consistently with Title VII, which permits a plaintiff to recover punitive damages in employment discrimination cases.

> [I]n order for the state law "to provide for the execution within the state of the policies embodied in ... the Civil Rights Act of 1991," Ky.Rev.Stat. Ann. § 344.020(1), the state law must allow punitive damages. Allowing punitive damage recoveries under state law provides the proper incentives to state law plaintiffs as well as executing the policies of deterrence and conformity embodied in the federal legislation. The argument based on applying *expressio unius* is simply not definitive enough to

overcome all the other reasons which support allowing punitive damages in state court discrimination cases. Therefore, this Court predicts that the most persuasive arguments would cause Kentucky courts to allow punitive damages. *Id.* at 581. This Court recently reiterated that view in *Barton v. United Parcel Service, Inc.,* 175 F.Supp.2d 904 (W.D.Ky. 2001). While this Court has consistently held that punitive damages are available under the Act, Judge Simpson in the Western District of Kentucky and Judge Forrester in the Eastern District of Kentucky have held to the contrary. *See Boone v. Kent Feeds, Inc.,* No. No. 3:99CV-728-S, 2001 WL 1775375, 2001 U.S. Dist. LEXIS 9616 (W.D.Ky. July 10, 2001); *Messick v. Toyota Motor Mfg. Kentucky, Inc.,* 45 F.Supp.2d 578 (E.D.Ky. 1999).

Likewise, in *Lewis v. Quaker Chemical Corp.,* No. 99 5482, 2000 WL 1234356, 2000 U.S.App. LEXIS 22321, (6th Cir. Aug. 24, 2000), the Sixth Circuit held that punitive damages were not available. However, more recently in another unpublished opinion the Sixth Circuit implicitly overruled *Lewis* on the punitive damages issue.[7] *See Layne v. Huish Detergents, Inc.,* No. 00–6082, 40 Fed.Appx. 200, 2002 U.S.App. LEXIS 14015 (6th Cir. July 10, 2002). The *Layne* court explained:

> However, the better understanding of available remedies under the Kentucky Act is found in cases holding that punitive damages are available. In *Timmons* ... the court held that punitive damages are available under the Kentucky Act because it emulates the Federal Civil Rights Act which was amended to allow punitive damages. The court made the same conclusion that punitive

damages were available, although based on different reasoning, in *Barton* ... In *Barton,* the court recognized that the Kentucky general punitive damages statute, Ky.Rev.Stat. § 411.184, authorized punitive damages in all actions except breach of contract.... Moreover, Kentucky state courts have generally held that punitive damages are available in wrongful termination cases. *See Simpson Cty. Steeplechase Ass'n, Inc. v. Roberts,* 898 S.W.2d 523, 526, 42:4 Ky. L. Summary 24 (Ky.Ct.App.1995). This Court concludes that punitive damages are available under the Kentucky Act.

*Id.* at 207–08, 2002 U.S.App. LEXIS 14015, *20–22.

Once again, this Court has considered both sides of the argument on this issue. The Court cannot find any reason to deviate from its earlier decisions that punitive damages are available under the Kentucky Act. Thus, for purposes of this motion for summary judgment, the Court will predict that the Kentucky Supreme Court will hold that punitive damages are available in employment discrimination cases under the Kentucky Act. Such a result seems most consistent with Kentucky's policy of interpreting the Kentucky Act consistent with the policies embodied in Title VII.

■■■ Defendant next argues that even if punitive damages are technically available under the Kentucky Act as a matter of law, in this case Plaintiff has no evidence that Defendant acted toward her with any oppression, fraud or malice. Viewing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff could possibly establish that Defendant knew that Sall and Ouldhanni were harassing women and deliberately failed to ad-

---

**7.** Interestingly, Circuit Judge Cole and District Judge Tarnow were members of both the *Lewis* and the *Layne* panels.

dress the problem. Thus, for the purpose of summary judgment the Court will allow Plaintiff's punitive damages claim to stand. Whether Plaintiff will actually be able adduce enough evidence at trial to go to the jury on the punitive damages issue is a different question for a different day.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

On Defendant's motion for summary judgment, the Court having reviewed the memoranda and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED as to Plaintiff's claims of intentional infliction of emotional distress and negligent supervision, and DENIED as to Plaintiff's sexual harassment and punitive damages claims.