MEMORANDUM OPINION
 

 KATZ, District Judge.
 

 This matter is before the Court on Defendant’s Motion to Dismiss, or in the alternative for Summary Judgment (Doc. No. 34). The Court has jurisdiction to decide this matter pursuant to 42 U.S.C. § 2000e-5(f)(3). For the reasons stated below, Defendant’s motion will be granted.
 

 Background
 

 On March 11, 1999, Plaintiff Jamie McFarland (“McFarland”) began employment with Defendant United States Postal Service’s (“Postal Service”) main station in Toledo, Ohio. McFarland was designated a “Casual Mailhandler,” which meant that she was a temporary or part-time worker who did not receive extensive orientation or union representation.
 

 McFarland alleges that on March 28, 1999, her acting supervisor, Robert Gerón-imo (“Gerónimo”), grabbed her and attempted to kiss her; McFarland alleges that after she pulled away from Gerónimo, he made inappropriate comments concerning her neck and lips. Gerónimo served as temporary supervisor on Sundays and at other intermittent times; otherwise, he worked as a mail handler on the opposite side of the building from Plaintiff. McFarland also alleges that in April or May of 1999, Gerónimo spread a number of unfounded rumors involving her attitude, work performance and promiscuity with regard to other male Postal Service employees. Furthermore, Gerónimo allegedly required McFarland to operate equipment (LIPS parcel sorting machines) that she was not trained to operate, and required her to leave work early on occasion.
 

 Approximately two days after the alleged attempted kiss, McFarland spoke with Gerónimo and asked him to stop the alleged harassment. Approximately five weeks after the kissing incident, Plaintiff brought her problem to the attention of her regular supervisor, Barb Petrusky (“Petrusky”), and her plant manager, Randy Carter, who both assured McFarland that Gerónimo would be talked to about his conduct. Plaintiff alleges that these meetings did not result in any change in Geronimo’s behavior.
 

 On June 23, 1999, McFarland first contacted the Postal Service Equal Employment Opportunity office with her complaint about Gerónimo; this contact occurred over eighty-five (85) days after the initial action giving rise to the complaint. In July of 1999, McFarland resigned from her position as a Casual Mailhandler, and claims that she was constructively terminated.
 
 [1]
 
 On August 3, 1999, McFarland received notice of her right to file an individual complaint, which she filed on August 28, 1999. On
 
 *CMLXII
 
 October 21, 1999, McFarland’s formal complaint was accepted for EEO investigation on four issues, including:
 

 1. Geronimo’s alleged March 1999 kiss attempt;
 

 2. whether Gerónimo spread rumors and subjected McFarland to disparate treatment;
 

 3. whether Gerónimo failed to tell another employee to stop keying on a machine, causing a magazine to fall on McFarland’s hand; and
 

 4. whether Petrusky accused McFarland of spreading rumors and “being at the center of most of the trouble on the work floor.”
 

 When the EEO process was not completed within 180 days of its filing, Plaintiff filed the instant action in this Court, claiming discrimination on account of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e),
 
 et seq.
 

 On November 17, 2000, the Postal Service filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1), due to Plaintiffs failure to file her EEO complaint within 45 days of the date of the discriminatory action and thereby exhaust her administrative remedies.
 
 See
 
 29 C.F.R. § 1614.105(A)(1). This Court granted Defendant’s motion on March 6, 2001. In
 
 McFarland v. Henderson,
 
 307 F.3d 402 (6th Cir.2002), however, the Sixth Circuit reversed and remanded the case, holding that McFarland had alleged facts “sufficient to state a claim that a hostile work environment existed less than 45 days prior to the date of her first contact with the EEOC.”
 
 Id.
 
 at 408-09. The Postal Service has now filed a motion to dismiss, or in the alternative for summary judgment.
 

 Discussion
 

 A. Summary Judgement Standard
 

 Summary judgment is appropriate where “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of “informing the district court of the basis for its motion, and identifying those portions of ‘the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,’ which it believes demonstrate the absence of a genuine issue of material fact.”
 
 Celotex Corp. v. Catrett, 477
 
 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-mov-ant’s claim.
 
 Id.
 
 at 323-25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party “must set forth specific facts showing that there is a genuine issue for trial.”
 
 Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)
 
 (quoting
 
 Fed.R.Civ.P. 56(e)).
 

 Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient “simply [to] show that there is some metaphysical doubt as to the material facts.”
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) “requires the nonmoving party to go beyond the pleadings” and present some type of evidentiary material in support of its position.
 
 Celotex, 477
 
 U.S. at 324, 106 S.Ct. 2548;
 
 see also Harris v. General Motors Corp.,
 
 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered “against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will
 
 *CMLXIII
 
 bear the burden of proof at trial.”
 
 Celotex, 477
 
 U.S. at 322, 106 S.Ct. 2548.
 

 “In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party.”
 
 Williams v. Belknap,
 
 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing
 
 60 Ivy Street Corp. v. Alexander,
 
 822 F.2d 1432, 1435 (6th Cir.1987)). However, “ ‘at the summary judgment stage the judge’s function is not himself to weigh the evidence and determine the truth of the matter,’ ”
 
 Wiley v. U.S.,
 
 20 F.3d 222, 227 (6th Cir.1994) (quoting
 
 Anderson, 477
 
 U.S. at 249, 106 S.Ct. 2505); therefore, “[t]he Court is not required or permitted ... to judge the evidence or make findings of fact.”
 
 Williams,
 
 154 F.Supp.2d at 1071. The purpose of summary judgment “is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.”
 
 Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,
 
 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine “whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.”
 
 Anderson, 477
 
 U.S. at 251-52, 106 S.Ct. 2505;
 
 see also Atchley v. RK Co.,
 
 224 F.3d 537, 539 (6th Cir.2000).
 

 B. Defendant’s Motion for Summary Judgment
 

 1. Sexual Harassment
 

 It is unlawful for any employer “to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s ... sex.” 42 U.S.C. § 2000e-2(a)(l). Title VII does not permit individual liability for supervisors or managers; however, respondeat superior liability is incorporated within Title VIL
 
 Wathen v. General Electric Co.,
 
 115 F.3d 400, 405 (6th Cir.1997). Two types of sexual harassment are recognized in the case law: (1)
 
 quid pro quo
 
 harassment, in which the employee’s submission to sexual advances is a condition for receiving job benefits or detriments; and (2) hostile environment discrimination, in which the employee is subjected to offensive, sex-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment.
 
 Grego v. Meijer, Inc.,
 
 239 F.Supp.2d 676, 680 (W.D.Ky.2002) (citing
 
 Burlington Indus. Inc. v. Ellerth,
 
 524 U.S. 742, 751, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). In Plaintiffs response to Defendant’s motion to dismiss or in the alternative for summary judgment, McFarland concedes that “the one-day event between the Plaintiff and her supervisor Robert Gerónimo is not pervasive enough to constitute a hostile work environment because of sex.”
 
 [2]
 
 (Doc. No. 35, p. 2). Instead, Plaintiff now claims that she was subjected to
 
 quid pro quo
 
 sexual harassment.
 

 To prevail under a claim of
 
 quid pro quo
 
 sexual harassment, Plaintiff must prove:
 

 1) that she was a member of a protected class;
 

 2) that she was subjected to unwel-comed sexual harassment in the form of sexual advances or requests for sexual favors;
 

 3) that the harassment complained of was on the basis of sex;
 

 4) that her submission to the unwel-comed advances was an express or implied condition for receiving job benefits or that the employee’s refusal to submit
 
 *CMLXIV
 
 to the supervisor’s sexual demands resulted in a tangible job detriment; and
 

 5) the existence of respondeat superior liability.
 

 Bowman v. Shawnee State Univ.,
 
 220 F.3d 456, 461 (6th Cir.2000). Here, Plaintiff, as a woman, is a member of a protected class; she was subjected to unwelcomed sexual harassment in the form of Geronimo’s attempted kiss; said harassment was based on sex; and respondeat superior liability exists.
 
 [3]
 
 The issue in this case is whether Plaintiff suffered some tangible job detriment as a result of her failure to submit to Geronimo’s kiss. The terms “tangible job detriment” and “materially adverse employment action” are used interchangeably by the courts.
 
 Bowman,
 
 220 F.3d at 462 n. 5.
 

 To rise to the level of a tangible job detriment,
 

 [a] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.
 

 Id.
 
 at 461-62. “Purely subjective injuries, such as dissatisfaction with a reassignment, or public humiliation, or loss of reputation, are not adverse actions (citations omitted).”
 
 Forkkio v. Powell,
 
 306 F.3d 1127, 1130-31 (D.C.Cir.2002).
 

 Plaintiff asserts that she suffered an adverse employment action based on Defendant’s failure to train her to use the LIPS machine, directing the Court to
 
 Henson v. Dundee,
 
 682 F.2d 897 (11th Cir.1982), which held that deprivation of training can rise to the level of a tangible job detriment. In
 
 Henson,
 
 a male police chief prevented a female dispatcher from entering the police academy because she refused to have sex with him.
 
 Id.
 
 at 900. Granted, in the instant action, McFarland was told to operate a machine that she did not know how to use. However, even assuming
 
 arguendo
 
 that
 
 Henson
 
 applies in the Sixth Circuit,
 
 [4]
 
 these cases are distinguishable. Plaintiff was taught to operate the machine by another casual mail handler, and refused formal training when offered by Petrusky a few days later. (Doc. No. 34, Ex. 3, McFarland Depo., pp. 56-57). Additionally, McFarland did not suffer a pay reduction, job reduction, or any change in benefits. (Doc. No. 34, Ex. 2).
 

 2. Constructive Discharge
 

 McFarland also claims that her resignation from her position constituted a constructive discharge, which might also satisfy the tangible job detriment requirement. In
 
 Logan v. Denny’s Inc.,
 
 259 F.3d 558 (6th Cir.2001), the court instructed:
 

 To demonstrate a constructive discharge, [the plaintiff] must adduce evi
 
 *CMLXV
 
 dence to show that 1) “the employer ... deliberately create[d] intolerable working conditions, as perceived by a reasonable person,” and 2) the employer did so “with the intention of forcing the employee to quit....”
 
 Moore v. KUKA Welding Sys.,
 
 171 F.3d 1073, 1080 (6th Cir.1999). “To determine if there is a constructive discharge, both the employer’s intent and the employee’s objective feelings must be examined.”
 
 Id.
 
 (citing
 
 Held v. Gulf Oil Co.,
 
 684 F.2d 427, 432 (6th Cir.1982)).
 

 Id.
 
 at 568-69. Moreover, “[w]hen an employee alleges that he was forced to resign, the employee’s perception must be viewed objectively without consideration of his undue sensitivities.”
 
 Wilson v. Firestone Tire & Rubber Co.,
 
 932 F.2d 510, 515 (6th Cir.1991) (quoting
 
 Henry v. Lennox Indus. Inc.,
 
 768 F.2d 746, 752 n. 3 (6th Cir.1985)). An “employee has ‘an obligation not to assume the worst, and not to jump to conclusions too fast.’ ”
 
 Id.
 
 (quoting
 
 Garner v. Wal-Mart Stores, Inc.,
 
 807 F.2d 1536, 1539 (11th Cir.1987)).
 

 In
 
 Logan,
 
 the court adopted the use of a set of non-exclusive factors as set forth by the Fifth Circuit to determine if a plaintiff has satisfied the first prong of the constructive discharge test, which states:
 

 Whether a reasonable person would have feel [sic] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; ... [or] badgering, harassment, or humiliation by the employer calculated to encourage the employee’s resignation ...
 

 Logan,
 
 259 F.3d at 569 (quoting
 
 Brown v. Bunge Corp.,
 
 207 F.3d 776, 782 (5th Cir.2000)). “In essence, in order to defeat summary judgment Plaintiff[ ] must prove that Defendant intentionally compelled [her] resignation[ ] by making [her] working conditions so unpleasant that a reasonable person would find them intolerable.”
 
 Curtis,
 
 2002 U.S. Dist. LEXIS 11371, at *6-7.
 

 The
 
 Logan
 
 court denied the defendant’s motion for summary judgment on the plaintiffs allegation of constructive discharge by showing that plaintiff was forced to accept either termination or a reassignment from waiting tables to busing tables.
 
 Logan,
 
 259 F.3d 558, 573;
 
 see also Kinamore v. EPB Electric Utility,
 
 92 Fed.Appx. 197, 205, 2004 WL 253367, at *7 (6th Cir.2004) (finding that repeated smoking and cursing in the plaintiffs presence and temporary reassignment were not sufficiently severe to constitute a constructive discharge);
 
 Curtis,
 
 2002 U.S. Dist. LEXIS 11371, at *9-11 (determining that a reduction in job responsibilities without a salary decrease is not a constructive discharge).
 

 McFarland resigned four months after her supervisor attempted to kiss her, and one day after she was told that she would be terminated if she was absent from work again. (Doc. No. 34, Ex. 4, Petrusky Depo., ¶¶ 19-21, pp. 5-6). Additionally, Gerónimo allegedly told fellow employees that McFarland had a bad attitude, assigned her to tasks for which she had yet to be trained, and spread rumors about her personal life. (Doc. No. 34, Ex. 3, McFarland Depo., pp. 54, 36, 29). Finally, while clearing a jam in a sorting machine, Gerónimo allegedly caused a stack of magazines to fall out of the machine onto Plaintiffs hand, leaving a small bruise which necessitated neither medical help nor use of a FirsU-Aid kit.
 
 Id
 
 at pp. 82-84. Even when examined in the light most favorable to her, Plaintiff has failed to produce evidence sufficient to show that her working conditions were so intolerable that a reasonable person would have felt compelled to resign. Because McFarland
 
 *CMLXVI
 
 has failed to prove the first prong of the test stated in
 
 Logan,
 
 the Court will not address the second prong. Accordingly, Defendant’s motion to dismiss or in the alternative for summary judgment is granted.
 

 Conclusion
 

 For the reasons stated above, Defendant’s Motion to Dismiss, or in the alternative for Summary Judgment (Doc. No. 34) is granted.
 

 IT IS SO ORDERED.
 

 JUDGMENT ENTRY
 

 For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendant’s Motion to Dismiss, or in the alternative for Summary Judgment (Doc. No. 34) is granted.
 

 [1]
 

 . The Postal Service claims that McFarland resigned after being warned that any additional absences would result in the loss of her job due to excessive absenteeism. Defendant has also represented to the Court that Plaintiff was subsequently hired to fill a permanent position in October 2000 at the same Postal Service location from which she previously resigned.
 

 [2]
 

 . "Plaintiff admits that no other act of harassment took place, but that after this Gerónimo began and continued to cause her grief on the job....” (Doc. No. 35, pp. 2-3).
 

 [3]
 

 . "Where the complaint alleges
 
 "quid pro quo "
 
 harrassment [sic ] ... the employer is strictly liable under a respondeat superior theory."
 
 Pierce v. Commonwealth Life Ins. Co.,
 
 40 F.3d 796, 803 (6th Cir.1994) (citing
 
 Kauffman v. Allied Signal, Inc.,
 
 970 F.2d 178, 183 (6th Cir.1992)).
 

 [4]
 

 . Another District Court in the Sixth Circuit has held that deprivation of training is not a tangible job detriment.
 
 See Curtis v. Hangar Prosthetics & Orthotics, Inc.,
 
 2002 U.S. Dist. LEXIS 11371, at *11 (W.D. Ky. June 25, 2002) (quoting
 
 Needy v. Village of Woodridge,
 
 1997 WL 461093, at *6, 1997 U.S. Dist. LEXIS 11813, at *18 (N.D.Ill. Aug. 7, 1997)) ("deprivations of training opportunities do not constitute an adverse employment action under Title VII’').